**Moise KATZ and Lowell Kousins, Plaintiffs,**

v.

**COMDISCO, INC., Kenneth N. Pontikes, Michael J. Brown, Frank D. Trznadel, Jr., Robert A. Bardagy, Basil R. Twist, Jr., William M. Pontikes, John F. Slevin, and John J. Vosicky, Defendants.**

**No. 86 C 444.**

United States District Court, N.D. Illinois, E.D.

Oct. 7, 1987.

Donald E. Egan, Bonita L. Stone, John S. Brennan, Katten, Muchin, Zavis, Pearl, Greenberger & Galler, Jeffrey Schulman, Larry D. Drury, Larry D. Drury, Ltd., Chicago, Ill., Stuart D. Wechsler, Joseph H. Einstein, Zachary Alan Starr, Goodkind, Wechsler, Labaton & Rudoff, New York City, for plaintiffs.

Eugene E. Gozdecki, Gozdecki, Zido & Behnke, Alan N. Salpeter, John E. Muench, Caryn Jacobs, Mayer, Brown & Platt, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

Based on defendants' alleged misrepresentations concerning the tax liability of Comdisco, Inc., plaintiffs raise claims of federal securities law violations, common law fraud, and negligent misrepresentation. Plaintiffs, wishing to bring this lawsuit as a class action, have moved to certify a class of purchasers of Comdisco stock during the period of the alleged misrepresentations. For the reasons stated herein, plaintiffs' motion is granted in part and denied in part.

## FACTS

Comdisco is a Delaware corporation whose executive offices are located in Rosemont, Illinois. The corporation's common stock is traded on the New York Stock Exchange. Comdisco buys, sells, and leases new and used IBM computer equipment. The company frequently engages in a subleasing scheme: selling computer equipment to a customer, leasing it back for a period of eight years, then subleasing it to a third party for a shorter period of time. Typically, after subleasing its equipment to third-party users, the company enters into a lease agreement with a financial institution. Under this agreement, Comdisco assigns its lease rentals to the financial institution in exchange for the present value of those rentals discounted at a fixed rate of interest. For tax and accounting purposes, the company has treated the proceeds of such assignments as loans payable by Comdisco. Consequently, on its federal income tax returns, Comdisco has not reported these discounted lease rentals as income.

In early 1983, the Internal Revenue Service ("IRS") commenced an audit of Comdisco's tax returns for fiscal years 1980, 1981, and 1982. During the audit, the examining agent for the IRS questioned Comdisco's practice of excluding its discounted lease rentals from the income that it reported. On July 2, 1984, the IRS agent issued a "30–day letter," tentatively pro-

posing adjustments in Comdisco's tax liability. In the 30–day letter, the agent concluded that the company's discounted lease rentals were taxable income, and that Comdisco owed an additional $210 million in taxes for the years 1980–1982. Comdisco then filed a protest with the IRS's District Director, challenging the agent's findings. Persuaded by Comdisco's arguments, the reviewing IRS appellate officer remanded the case to the examining agent in early 1985. On remand, the agent continued to contend that Comdisco had improperly excluded its discounted lease rentals from its reported income. On October 31, 1985, the agent issued a "90–day letter," an official notice of Comdisco's tax deficiency. According to the 90–day letter, the company owed approximately $200 million in back taxes. On January 9, 1986, Comdisco filed a petition in the United States Tax Court to challenge the Notice of Deficiency. Ultimately, on April 7, 1986, the IRS agreed to reduce Comdisco's tax liability for 1980–1982 to approximately $6 million.

Plaintiffs' claims arise from allegations that Comdisco and its officers withheld from the investing public important information about the IRS audit and the company's potential tax liability. From the audit's commencement in early 1983 until the filing of the tax appeal in January 1986, Comdisco made few public references to the ongoing IRS investigation. The corporation's 1983 Annual Report briefly mentioned the audit, but downplayed its significance: "[N]o final adjustments have been proposed and no provision for additional taxes is deemed necessary." Comdisco, Inc., 1983 Annual Report 39. After issuance of the 30–day letter, Comdisco declared that "[p]roposed adjustments claim a significant amount of additional taxes," but the company also expressed the belief that it would prevail on appeal. Comdisco, Inc., 1984 Annual Report 28. Even after it received an official Notice of Deficiency, Comdisco elected not to disclose the precise magnitude of its potential tax liability. Instead, the company merely reiterated its 1984 statement that the proposed tax adjustments were "significant," but that most of the adjustments would probably be overturned on appeal. Comdisco, Inc., 1985 Annual Report 28. Not until January 9, 1986, when Comdisco filed its appeal in Tax Court, did the company publicly disclose the full extent of its potential tax liability. The day after the announcement, the price of Comdisco stock fell sharply.

Plaintiffs Moise Katz and Lowell Kousins held shares of Comdisco stock on the day the company announced its appeal of the $200 million tax assessment. Both Katz and Kousins had purchased Comdisco stock after the IRS had begun its audit. Katz acquired 50 shares of Comdisco stock on January 7, 1986, only two days before the company disclosed the amount of its potential tax liability. Kousins both bought and sold Comdisco stock at various times during the course of the audit.

Plaintiffs allege that Comdisco and its officers engaged in a common scheme to mislead the public by concealing material information about the company's potential tax liability. Plaintiffs further assert that this nondisclosure scheme achieved its intended result: the artificial inflation of the market price of Comdisco stock. Based on these allegations, plaintiffs seek damages from Comdisco and its officers under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a) (1982), and Securities and Exchange Commission ("SEC") Rule 10b–5, 17 C.F.R. § 240.10b–5 (1983). In addition to asserting that defendants violated federal securities law, plaintiffs raise common law claims of fraud and negligent misrepresentation against defendants.

Katz and Kousins wish to assert these claims on behalf of a class of similarly situated Comdisco shareholders. The named plaintiffs have moved to certify a class consisting of all persons and entities who purchased Comdisco stock in the open market between September 1, 1983 and January 9, 1986. The proposed class would not include the defendants, family members of Comdisco's officers and directors, subsidiaries and affiliates of Comdisco, or the successors or assigns of any of the defendants.

## DISCUSSION

Before granting a motion for class certification, this court must determine whether the proposed class satisfies four prerequisites:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In addition, this court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

█ Assessing plaintiffs' motion in light of the Rule 23 requirements, this court grants the motion, subject to the following modifications: (1) Lowell Kousins cannot serve as a representative of the class; (2) the class period will begin on July 2, 1984; and (3) the class will be certified only with respect to the federal securities law claim.

### I. *Numerosity*

To maintain a class action under Rule 23, the proposed class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Plaintiffs have estimated that their class encompasses thousands of potential members. Defendants do not dispute plaintiffs' estimate. Clearly, this class satisfies the numerosity requirement.[1]

1. Although this court's redefinition of the class period will undoubtedly reduce the size of the class, the number of potential plaintiffs remains sufficiently large to justify class action treatment.

2. Plaintiffs characterize this figure as an inaccurate measure of Kousins' injury, because defendants' calculations do not take into account the inflationary impact of Comdisco's nondis-

### II. *Typicality*

Katz and Kousins cannot bring a class action suit unless their claims and defenses are typical of the claims and defenses of the class they seek to represent. Fed.R. Civ.P. 23(a)(3). The parties have vigorously contested the typicality of the named plaintiffs. After weighing the competing arguments, this court has decided that Kousins lacks the typicality required of a class representative, but that Katz may represent the proposed class because he is a typical member of that class.

### A. *Plaintiff Lowell Kousins*

█ On the issue of typicality, the Seventh Circuit has declared: "Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative." *Koos v. First National Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir.1974). One such unique defense that precludes a plaintiff from representing a class is lack of standing. A plaintiff cannot bring suit on behalf of a class when he himself suffered no injury. *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495 (7th Cir. 1972).

█ Defendants argue persuasively that Lowell Kousins suffered no injury as a result of Comdisco's alleged misrepresentations. Kousins seeks damages based on the theory that he purchased Comdisco stock at a price that was artificially inflated by the company's nondisclosure of its potential tax liability. As defendants point out, however, Kousins actually sold more Comdisco shares than he bought during the plaintiffs' proposed class period. Moreover, the proceeds from Kousins' sales during the period exceeded his class-period expenditures on Comdisco stock by almost $60,000.[2] By selling more stock than he

closure for each day during the class period. Admittedly, defendants' calculation of Kousins' financial position is imprecise; but this court is not persuaded that accounting for inflation would alter the fact that Kousins made a profit during the class period. In fact, it is more likely that adjustments for inflation would increase the amount of Kousins' profit.

purchased at a purportedly inflated price, Kousins became "a beneficiary of the alleged fraud.... [This] puts him in a different position from the other victims of the alleged fraud whom he seeks to represent." *Kraus v. Paterson Parchment Paper Co.*, 65 F.R.D. 368, 369 (S.D.N.Y.1974); *cf. Etshokin v. Texasgulf, Inc.*, 612 F.Supp. 1220 (N.D.Ill.1985) (net purchaser of call options in deflated market incurred no compensable damages).[3]

Even after this court's revision of the class period, Kousins cannot establish that he incurred damages as a result of his Comdisco stock transactions. From July 2, 1984 to January 9, 1986, Kousins made more money from selling Comdisco stock than he paid to acquire the stock. Although Kousins' profits during this period were significantly smaller than his profits during the originally proposed class period, the fact remains that Kousins profited from his stock transactions at the time of defendants' alleged fraud. The asserted inflationary impact of Comdisco's nondisclosure could only have increased the size of Kousins' profits.[4]

Because he suffered no injury, but instead profited during the alleged nondisclo-

sure scheme, Lowell Kousins cannot serve as a representative of the proposed class.

### B. *Plaintiff Moise Katz*

■ Defendants also contend that plaintiff Moise Katz is not a typical member of the class because Katz, like Kousins, incurred no damages. Defendants point out that Katz has retained his Comdisco shares, and that the price of Comdisco stock is now higher than it was when Katz purchased the stock. Defendants also observe that after Comdisco's settlement with the IRS, Katz now holds exactly what he paid for originally, stock in a company that does not have a $200 million contingent tax liability.

■ Although defendants' observations may be correct, they are irrelevant when it comes to determining whether Katz was injured. Under the out-of-pocket rule, the standard measure of damages in securities fraud litigation, a defrauded buyer can recover the difference between the purchase price of the stock and the stock's actual value, "all measured at the time of the transaction." *In re LTV Securities Litigation*, 88 F.R.D. 134, 148 (N.D.Tex.1980). Any fluctuations in price following the transaction do not affect the calculation of damages. *Sirota v. Solitron Devices, Inc.*,

---

Plaintiffs also argue that because some of the stock sold by Kousins during the class period was purchased before the period began, these pre-period purchases should be deducted from Kousins' class period earnings, thereby producing a net loss. This argument proves too much. Under plaintiffs' theory of damages, the out-of-pocket rule, a defrauded buyer can recover the difference between what he paid for the stock and the stock's actual value, "*all measured at the time of the transaction.*" *In re LTV Securities Litigation*, 88 F.R.D. 134, 148 (N.D.Tex.1980) (emphasis added). Therefore, based on plaintiffs' own theory, any transactions that occurred before or after the class period are irrelevant to the calculation of Kousins' damages.

**3.** Plaintiffs contend that Kousins has standing based on *Wool v. Tandem Computers Inc.*, 818 F.2d 1433 (9th Cir.1987). In *Wool*, a securities fraud case, a district court granted defendants' motion for summary judgment. The court concluded that the plaintiff had suffered no injury because he sold the same amount of stock that he purchased during the period of defendants' alleged misrepresentation. The Ninth Circuit reversed, declaring that because "the increment of artificial inflation caused by misrepresenta-

tions may fluctuate ..., an in-and-out trader ... may suffer recoverable damages under the out-of-pocket rule even in the absence of corrective disclosures." *Id.* at 1437.

Regardless of the persuasiveness of the Ninth Circuit's theory, the facts of this case are distinguishable from *Wool.* Unlike the plaintiff in *Wool*, Kousins was a net seller of Comdisco stock during the plaintiffs' proposed class period. In this respect, Kousins more closely resembles the plaintiff in *Etshokin*, a net purchaser in a deflated market who was found not to have incurred any damages. Furthermore, unlike *Wool*, Kousins made a profit from his stock transactions during both the originally proposed class period and the revised class period. Kousins' profits were only enlarged by the alleged inflationary impact of Comdisco's nondisclosure. *See* note 4 *infra*. Thus, even under *Wool*'s theory of damages, Kousins cannot establish that he suffered any injury.

**4.** Kousins sold 700 shares of Comdisco stock between the issuance of the 90–day letter and Comdisco's disclosure of its potential tax liability—at a time when, based on plaintiffs' allegations, the price of the stock was most substantially overstated.

673 F.2d 566 (2d Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *Harris v. American Investment Co.,* 523 F.2d 220 (8th Cir.1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976); *Cant v. A.G. Becker & Co., Inc.,* 379 F.Supp. 972 (N.D.Ill.1974); *Voege v. Ackerman,* 364 F.Supp. 72 (S.D.N.Y.1973). Therefore, the subsequent increase in the price of Comdisco stock has no bearing on Katz's claim for damages.

Katz has alleged that he purchased the stock at an artificially inflated price, the result of Comdisco's fraudulent scheme to conceal its contingent tax liability. If he can prove what he has alleged, Katz will be entitled to recover the difference between what he paid for the stock and its actual value at the time he acquired it. Consequently, Katz, unlike Kousins, has suffered an injury typical of the members of the class.

■ Additionally, defendants assert that Katz is atypical because he is subject to the unique defense that he is a speculator. Plaintiffs' claim rests on a fraud-on-the-market theory. Under this theory, once it is established that a material misrepresentation affected the market price of certain stock, courts typically presume that plaintiffs relied on the integrity of the market when purchasing the stock. *See Blackie v. Barrack,* 524 F.2d 891, 905–06 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Nonetheless, defendants can rebut this presumption by demonstrating that a particular plaintiff did not rely on the market, but instead engaged in stock speculation. *See Masri v. Wakefield,* 106 F.R.D. 322 (D.Colo.1984); *Cohen v. Laiti,* 98 F.R.D. 581 (E.D.N.Y. 1983). Such "nonreliance may vitiate the typicality of a named plaintiff's claims in a fraud on the market case." *Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 787 (N.D.Ill.1984).

In this case, defendants characterize Katz as a speculator who did not rely on the integrity of the market, and who therefore cannot represent a class of defrauded buyers. Defendants, however, cannot substantiate their claim of speculation. They point to Katz's background as a market maker and his history of employing speculative strategies such as "averaging down"; but Katz's past conduct does not establish speculative behavior in this particular case. Defendants' primary evidence of speculation in this case is Katz's deposition testimony that he purchased Comdisco stock because he believed it was "underpriced." This statement alone does not render Katz an uncharacteristic investor: "Although [plaintiff] may have had a strategy of looking for 'companies that are a bit undervalued,' this is hardly atypical as many investors look for 'bargains.'" *Baum v. Centronics Data Computer Corp.,* [1986–1987 Transfer Binder] Fed. Sec.L. Rep. (CCH) ¶ 92,797, at 93,899 (D.N.H. May 15, 1986) [available on Westlaw, DCT database].

■ Defendants offer no specific evidence of nonmarket factors or information that influenced Katz to buy Comdisco stock. On the contrary, Katz has testified that he decided to purchase the stock after reading about Comdisco in such publications as the *Wall Street Journal, Forbes,* and *Business Week.* When an investor relies on the reports of such standard business publications, he effectively relies on the integrity of the market. *Panzirer v. Wolf,* 663 F.2d 365 (2d Cir.1981), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982). Thus, in acquiring Comdisco stock, Katz behaved like a typical investor.[5] Because defendants cannot prove otherwise, Katz satisfies the typicality requirement of Rule 23(a)(3).

### III. *Adequacy of Representation*

■ Although he is a typical class member, Katz cannot represent the proposed

---

5. Arguably, Katz may be a more sophisticated investor than other members of the class. A differing degree of sophistication, however, will not disqualify a plaintiff from representing a class in a market fraud case, so long as the plaintiff has relied on the integrity of the market. *Baum, supra; Stoller v. Baldwin–United Corp.,* [1985–1986 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 92,298, at 92,031 (S.D.Ohio June 4, 1985); *Grossman, supra; Ridings v. Canadian Imperial Bank,* 94 F.R.D. 147, 152 (N.D.Ill.1982).

class unless he demonstrates that he "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Fulfillment of this requirement hinges on two factors. First, plaintiff must employ competent and experienced counsel capable of conducting the litigation. Second, plaintiffs' interests must not conflict with the best interests of the class. *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir.1977); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

Defendants raise no complaint about Katz's selection of counsel. The attorneys representing plaintiffs in this case have extensive experience in securities class action litigation. Nonetheless, defendants challenge Katz's ability to represent the class. They claim that Katz does not know enough about this case to represent the class adequately. Previously, courts have denied class certification in cases where the named plaintiff showed virtually complete unfamiliarity with his case. *See Efros v. Nationwide Corp.*, 98 F.R.D. 703 (S.D. Ohio 1983); *Greenspan v. Brassler*, 78 F.R.D. 130 (S.D.N.Y.1978). Defendants argue that Katz is just as uninformed as the plaintiffs in *Efros* and *Greenspan*. Depicting Katz as a mere puppet for his lawyers, defendants assert that he cannot adequately represent the class because "[a]n attorney who prosecutes a class action with unfettered discretion becomes, in fact, the representative of the class. This is an unacceptable situation because of the possible conflicts of interest involved." *In re Goldchip Funding Co.*, 61 F.R.D. 592, 595 (M.D.Pa.1974). Defendants suggest that the posibility of a conflict of interest is even greater in this case because Katz has a close relationship with his attorneys. Katz has employed the same law firm to litigate 16 other class action suits that he has initiated. *Cf. Susman,* 561 F.2d at 90–91 (neither class attorneys, their relatives, nor their law partners can serve as class representatives because of potential conflicts of interest).

After reviewing Katz's deposition testimony, this court concludes that he has suf-ficient knowledge of this case to represent the class properly. Although Katz is uninformed about certain aspects of the case, defendants exaggerate the extent of his ignorance. Katz understands the basic facts underlying his claim—the nature of the IRS audit, Comdisco's nondisclosure of its potential tax liability, and the alleged inflationary impact of the nondisclosure on the price of Comdisco stock. In addition, he has reviewed the original complaint and discussed the amended complaint with his lawyers. In these respects, Katz is much better informed than the plaintiffs who were deemed inadequate in *Efros* and *Greenspan*. Katz may not understand all the intricacies of this complex case, but he knows what his lawsuit is about. This is all he needs to know in order to provide the class with adequate representation. *See Grossman*, 100 F.R.D. at 790.

■ In finding that Katz will adequately represent the class, this court rejects defendants' "conflict of interest" theory. Katz's relationship with his attorneys differs from the sort of attorney-client affiliation that has blocked class certification in the past. Katz is neither related to nor employed by his lawyers; nor is there any evidence that he will share in any fees awarded to the attorneys. Defendants assert a conflict based solely on the fact that Katz has retained the same counsel in a number of class action suits. There is no precedent for finding a conflict under these facts, and this court sees no reason to do so now: "[T]here is certainly nothing wrong with plaintiff hiring a law firm in which he has confidence based on past dealings." *Id.* As for Katz's involvement in other class actions, this fact only tends to support Katz's claim that he will adequately represent the class. *See Markewich v. Adikes*, 76 F.R.D. 68, 75 (E.D.N.Y.1977) (plaintiff's past experience in class action litigation suggests that he will provide vigorous advocacy for the proposed class).

■ In a further attack on Katz's adequacy, defendants assert that he will have no incentive to prove the claims of most class members because he purchased Com-

disco stock late in the class period. This argument, however, ignores Katz's allegation of a common scheme of fraudulent conduct. When a named plaintiff alleges a common course of conduct in a securities class action, the fact that he purchased stock late in the class period does not vitiate his suitability as a class representative. *Green v. Wolf Corp.*, 406 F.2d 291, 299 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *In re Consumers Power Co. Securities Litigation*, 105 F.R.D. 583, 608 (E.D.Mich.1985); *Grossman*, 100 F.R.D. at 790–91. Because the damages alleged in this case flow from a common scheme of misrepresentation, Katz's advocacy of his own position will advance the cause of all class members.[6]

Finally, defendants urge this court to disqualify Katz from representing the class because he has refused to cooperate during pretrial discovery. In several cases, courts have declared a named plaintiff unfit to undertake the fiduciary obligation of class representation because he failed to comply with discovery requests. *See Darvin v. International Harvester Co.*, 610 F.Supp. 255 (S.D.N.Y.1985); *Kline v. Wolf*, 88 F.R.D. 696 (S.D.N.Y.1981), *aff'd in relevant part*, 702 F.2d 400 (2d Cir.1983); *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502 (S.D.N.Y.1976). The plaintiffs in these cases, however, committed glaring violations of the discovery rules; and their lack of cooperation was only one of several factors contributing to their inadequacy. Katz, on the other hand, has not engaged in the sort of extreme obstruction of discovery that would justify denial of class certification. *See In re AM International, Inc. Securities Litigation*, 108 F.R.D. 190, 197 (S.D.N.Y.1985).

Defendants' contentions notwithstanding, Katz has fulfilled the two basic requirements for adequate class representation. First, he has employed qualified counsel experienced in conducting this type of litigation. Second, his interests coincide with the interests of the proposed class. Consequently, Katz has satisfied the adequacy prerequisite of Rule 23.

## IV. *Predominance of Common Questions*

While Katz may be a satisfactory class representative, he cannot bring a class action suit unless "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Not only must common questions exist; these questions must "predominate over any questions affecting only individual members" of the class. Fed.R.Civ.P. 23(b)(3).

### A. *Federal Securities Law Claim*

Defendants argue that Katz's securities fraud allegations do not involve enough common questions to justify class certification. During the proposed class period of 28 months, the facts surrounding this case varied from time to time. Defendants contend that, due to the shifting factual scenario, each class member will face different issues of proof, depending on when he purchased the stock.

Defendants' assertion is certainly true of the class members who purchased Comdisco stock before the IRS issued a 30–day letter on July 2, 1984. Comdisco itself did not know the amount of its potential tax liability until it received the 30–day letter. Therefore, unlike the rest of the class, plaintiffs who purchased stock before that time cannot base their claims on Comdisco's nondisclosure of its $200 million tax assessment. Regardless of how they articulate their claims, these plaintiffs will encounter proof problems that differ fundamentally from the issues of proof facing the remainder of the class. For this reason, this court has decided to exclude from the class all those who purchased Comdisco stock before July 2, 1984.

Contrary to defendants' assertions, however, the remaining class members raise claims whose common elements predomi-

---

**6.** This is particularly true now that the class has been narrowed to exclude those plaintiffs who purchased Comdisco stock before the IRS issued its 30–day letter. Following this redefinition of the class, the litigation can focus on a single issue common to all members of the class: Comdisco's failure to disclose its contingent tax liability.

nate over their individual differences. While the facts may have varied somewhat during the class period, this case lacks the sort of frequently fluctuating fact situation that has previously led courts to deny class certification. *See, e.g., Gelman v. Westinghouse Electric Corp.*, 73 F.R.D. 60 (W.D.Pa.1976) (certification denied because class period contained 18 separate, independently significant events), *aff'd by an equally divided court*, 612 F.2d 799 (3d Cir.1977). Moreover, the few factual variations that did occur during the revised class period do not affect the question common to all class members with respect to defendants' liability—i.e., whether Comdisco and its officers engaged in a common scheme to conceal the company's contingent tax liability. Although the factual background may have changed during the course of this scheme, "[t]he perpetuation of the alleged wrong over a lengthy period of time and through a variety of different documents does not defeat a class certification motion.... Nor is such a motion defeated by fluctuations in the underlying facts over the class period." *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 608 (W.D. Pa.1983); *see also Grossman*, 100 F.R.D. at 787; *Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339, 349 (N.D.Ill.1978).

■ Perhaps the changing factual background of the class period will create individual variations in damages among the class members; but this is an insufficient reason for denying class certification. Defendants have contended that the determination of damages for each individual class member would render this lawsuit unmanageable as a class action. *See* Fed.R.Civ.P. 23(b)(3)(D). Traditionally, however, the courts have not allowed individual questions of damages to prevent class certifica-

tion. *See Blackie*, 524 F.2d at 905; *In re McDonnell Douglas Corp. Securities Litigation*, 98 F.R.D. 613, 617 (E.D.Mo.1982); *Hochschuler*, 82 F.R.D. at 349; *Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480, 486 (E.D.Pa.1977).

Katz's claim that Comdisco violated federal securities laws raises questions common to all class members who purchased Comdisco stock after issuance of the 30-day letter. These common questions overshadow any individual issues pertaining to the claims of class members. Therefore, based on his allegations under federal securities law, Katz can bring a class action on behalf of all those who purchased Comdisco stock between July 2, 1984 and January 9, 1986.

### B. Common Law Claims

■ Katz's common law claims, however, do not lend themselves to class action treatment. Unlike securities fraud litigation, in which reliance is presumed for the entire class of stock purchasers, common law actions for fraud and negligent misrepresentation require each individual plaintiff to prove that he relied on the alleged misrepresentation. *Beebe v. Pacific Realty Trust*, 99 F.R.D. 60, 71 (D.Ore.1983); *McFarland v. Memorex Corp.*, 96 F.R.D. 357, 364 (N.D.Cal.1982); *Seiden v. Nicholson*, 69 F.R.D. 681, 686 (N.D.Ill.1976). Thus, individual issues of reliance would predominate over any common questions raised by Katz's allegations of fraud and negligent misrepresentation. Consequently, this court denies Katz's motion for class certification of his common law claims.[7]

### V. Superiority

Insofar as Katz's motion for class certification satisfies the four prerequisites of

---

7. The parties to this lawsuit have vigorously disputed the choice-of-law ramifications of the common law claims, debating whether adjudication of these claims would require application of more than one state's law. Having denied certification of these claims on alternative grounds, this court need not resolve the choice-of-law issue. It is ironic, however, that plaintiffs urge application of Illinois law to the com-

mon law claims. Illinois recognizes a cause of action for negligent misrepresentation only in cases where the defendant is in the business of supplying information. *Black, Jackson & Simmons Insurance Brokerage, Inc. v. IBM Corp.*, 109 Ill.App.3d 132, 64 Ill.Dec. 730, 440 N.E.2d 282 (1982). Thus, if Illinois law applied to this case, Katz's negligent misrepresentation claim would have to be dismissed.

Rule 23(a), a class action would be "superior to other available methods for the fair and efficient adjudication" of this controversy. Fed.R.Civ.P. 23(b)(3). The courts have adopted a general policy favoring class certification in securities fraud cases, based on these cases' unique suitability to class action treatment. *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Ridings v. Canadian Imperial Bank*, 94 F.R.D. 147, 156 (N.D. Ill.1982); *Dolgow v. Anderson*, 43 F.R.D. 472, 484–87 (E.D.N.Y.1968). Like other typical securities fraud suits, this case presents two compelling justifications for class certification. First, many class members who may have been damaged by the alleged fraud might find it too expensive to bring suit on their own behalf. Second, denial of class certification could promote the proliferation of duplicative suits by several similarly situated plaintiffs. It will be far more efficient to address the claims of all affected purchasers of Comdisco stock in a single class action.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is granted with respect to the federal securities law claim, subject to the following modifications: (1) plaintiff Lowell Kousins cannot represent the proposed class; and (2) the class period will begin on July 2, 1984 rather than September 1, 1983. With respect to the common law claims, plaintiffs' motion is denied.

IT IS SO ORDERED.

