**Steven ALEXANDER, Plaintiff,**

**v.**

**CENTRAFARM GROUP, N.V.; C & F Holding B.V.i.o.; Warburg Associates; Warburg Pincus & Company; Alta–Berkeley Limited Partnership; Media Beleggings–EM–Bestuursmaatschappij, N.V.; Guy De Blay; Mark Diskin; Peter Stalker III; Dr. G. Ph. Vogul; Lionel I. Pincus; Rodman W. Moorhead III; Bryan R. Wood; Salomon Brothers, Inc.; Alex. Brown & Sons Incorporated, Defendants.**

**No. 88 C 3378.**

United States District Court, N.D. Illinois, E.D.

Dec. 30, 1988.

---

**6.** *See supra,* n. 3.

Arthur T. Susman, Terry Rose Saunders, Terrence Buehler, Susman, Saunders & Buehler, Chicago, Ill., for plaintiff.

W. Donald McSweeney, Schiff Hardin & Waite, Sarah R. Wolff, Sachnoff, Weaver & Rubenstein, Ltd., David Krupp, Stephen Fedo, Neal, Gerber, Eisenberg & Lurie, Arthur Neal, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

## I. INTRODUCTION

Steven Alexander is a former owner of common stock of Centrafarm Group, N.V. ("Centrafarm" or the "Company"), a Dutch corporation. He brings this lawsuit against Centrafarm, its directors, its investment bankers, its controlling shareholders, and C & F Holding, B.V.i.o. ("C & F Holding"), a corporation which purchased Centrafarm's subsidiaries. The lawsuit is brought as a class action and a derivative action. Pending is plaintiff's motion for class certification. For the reasons stated below, plaintiff's motion is granted.

## II. FACTS

The following description of the facts is based primarily on plaintiff's complaint and briefs. For the purposes of this motion, the parties have not raised any substantial dispute concerning these facts.

Centrafarm is a multi-national company which marketed proprietary human health products. Its principal place of business was in Etten–Leur, The Netherlands. It operated through five wholly-owned subsidiaries. As of February 5, 1988, there were approximately 9 million shares of Centrafarm common stock issued and outstanding. Plaintiff was the owner of 13,-500 shares of Centrafarm common stock.

Prior to October 1987, Centrafarm had been considering a sale of the Company and had been in contact with at least twelve multi-national pharmaceutical companies which were contemplating purchasing the Company. After the October 19, 1987 stock market crash, certain members of the Company's Board of Supervisory Directors [1] who were also affiliated with the controlling shareholders [2] abandoned

---

1. In accordance with Dutch law, the Company is managed by a Board of Supervisory Directors and a Board of Managing Directors.

2. "Controlling shareholders" refers to defendants Warburg Associates ("Warburg", a Delaware limited partnership), Alta–Berkeley Limited Partnership ("Alta–Berkeley", a partnership), and Media Beleggings–EM–Bestuursmaatschap-

pij, N.V. ("Media"). These companies held approximately 22.7 percent, 7.8 percent, and 4 percent, respectively, of the outstanding common stock of Centrafarm. (The complaint also alleges that together, these three entities owned "between 35 percent plus and 47 percent plus of the outstanding shares.")

Other defendants include Warburg Pincus & Company ("WP", a New York partnership), the

efforts to sell the Company and began considering options to allow them to purchase the Company's assets.

On December 17, 1987, the Company announced that its management and controlling shareholders were considering various transactions designed to acquire complete ownership of the Company's assets by directing the Company to sell all of its assets to C & F Holding, a new, private company formed by the controlling shareholders and management. Upon completion of this sale, the Company would be put into liquidation and the unaffiliated shareholders[3] would receive a cash distribution of $11 per share, subject to various applicable withholding taxes.

On January 19, 1988, the Company's two Boards met to consider C & F Holding's proposal to purchase the Company's assets. The Boards retained Salomon Brothers, Inc., an investment banking firm, to render an opinion as to the fairness of the distribution to unaffiliated shareholders. The Boards also hired Alex. Brown & Sons Inc., an investment banking firm, to render an opinion as to the fairness of both the subsidiary sale price to the Company and the distribution to the unaffiliated shareholders. Alex. Brown was also hired to act as the Company's authorized representative to sign the sale contract, if appointed by the shareholders. According to the terms of the agreement between Alex. Brown and the Company, sixty percent of Alex. Brown's $500,000 fee would be paid only after it had rendered its fairness opinion and after it was appointed as the authorized representative.[4]

On January 28, 1988, C & F Holding made a formal proposal to buy the Company's subsidiaries at a price that would yield a $12.50 per share distribution to the unaffiliated shareholders, subject to withholding taxes. On February 5, 1988, the Company disseminated proxy materials to its shareholders, announcing a shareholder meeting to be held on March 8, 1988. At that meeting, the shareholders would vote on the subsidiary sale, the appointment of Alex. Brown, and the liquidation of the Company. The proxy materials described the proposed sale of Centrafarm's subsidiaries to C & F Holding, the dissolution of the Company, and the $12.50 per share distribution. The proxy statement recommended that the unaffiliated shareholders vote to approve the subsidiary sale and the liquidating distribution. It also stated that Salomon Brothers and Alex. Brown advised that the amount of the liquidating distribution to be received by the shareholders was fair from a financial point of view.

On March 8, 1988, the shareholders approved the subsidiary sale agreement. The approval was followed by a sixty-day statutory waiting period pursuant to Dutch law, during which any party could challenge the proposed liquidation plan. The sale closed on March 11, 1988, the same date on which C & F Holding was incorporated. On March 14, the Company was dissolved and put into liquidation. The statutory waiting period ended on approximately May 16, after which time the distribution to the unaffiliated shareholders was to be made. Plaintiff received his distribution on June 15.

Plaintiff alleges that the defendant directors and controlling shareholders of Centrafarm (now the directors and controlling shareholders of C & F Holding) prepared and disseminated a proxy statement which was false and misleading in that it omitted to state material facts relating to the value of the Company and misrepresented the Company's business, prospects and

---

sole general partner of Warburg; Lionel Pincus, the managing partner of WP and a supervisory director of the Company; Rodman Moorhead III, a supervisory director of the Company; Bryan R. Wood, a supervisory director of the Company who also controls Alta–Berkeley; Guy De Blay, a managing director of the Company; Mark Diskin, a managing director of the Company who, along with Wood, controls Alta–Berkeley; Peter Stalker III, a managing partner

of the company; and Dr. G. Ph. Vogul, a supervisory director of the company.

3. "Unaffiliated shareholders" refers to all shareholders other than the controlling shareholders.

4. Salomon Brothers and Alex. Brown were originally named as defendants. They subsequently were dismissed from the case pursuant to plaintiff's agreement.

profitability. The alleged omissions and misrepresentations include the following claims, among others: (a) that defendants failed to disclose the price and terms of any of the purchase proposals made to the Company by the companies which expressed an interest in buying it before October, 1987; (b) that defendants failed to disclose material aspects of the financing of C & F Holding's purchase of the Company's assets; (c) that defendants misstated the true value of the liquidation to unaffiliated shareholders; (d) that defendants failed to disclose that they were finalizing a licensing agreement with Japan which would dramatically increase the Company's profitability; (e) that defendants misrepresented that Alex. Brown and Salomon Brothers were independent when they expressed their fairness opinions, when in fact neither was independent; and (f) that defendants buried their actual year-end results for 1987 and repeatedly based their financial analyses on estimated 1987 year-end figures.

Plaintiff's complaint, which seeks compensatory and rescissionary damages, consists of four counts: violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); violation of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a); common law fraud; and breach of fiduciary duty.

### III. ANALYSIS

Plaintiff has moved to certify a class described as follows:

> All persons and entities who owned shares of Centrafarm common stock registered with the United States Securities and Exchange Commission in the period beginning February 5, 1988 but excluding defendants, members of their family, their heirs, successors and assigns, the officers, directors and affiliates and subsidiaries of any corporate defendant.

Plaintiff must initially satisfy the four prerequisites of Fed.R.Civ.P. 23(a):

> (1) the class is so numerous that joinder of all members is impracticable,
>
> (2) there are questions of law or fact common to the class,

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Because plaintiff seeks certification pursuant to Fed.R.Civ.P. 23(b)(3), he must satisfy two additional requirements:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

These six requirements will be addressed seriatim in the context of plaintiff's Section 10(b) claim, to which the parties have addressed most of their arguments.

■ *Numerosity.* Plaintiff states that the class consists of approximately 200 members. Defendants have not disputed the size of the class, nor have they argued that the numerosity requirement is not met. In a similar case, the Seventh Circuit has held that 151 shareholders in a securities fraud lawsuit met the numerosity requirement. *See Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326, 1333 (7th Cir.1969). The Court finds that the class is so numerous that joinder of all members is impracticable.

■ *Commonality.* Plaintiff asserts that the following questions, among others, are common to all class members: (1) whether defendants pursued or participated in the course of conduct alleged in the complaint; (2) whether documents and statements issued by defendants and disseminated to the class members contained misrepresentations or omissions of material facts concerning Centrafarm's value, business, financial condition or future business prospects; and (3) whether defendants acted with scienter in misrepresenting or failing to disclose material facts or in aiding and abetting such conduct. Defendants have not argued that the commonality requirement is not satisfied. The Court finds

that there are questions of law or fact common to the class.

■ *Typicality.* It is with respect to the typicality requirement that the defendants raise their only substantial objection to plaintiff's motion for class certification. In brief, defendants argue that plaintiff's claims are not typical of those of the class members because plaintiff is subject to a unique defense of reliance. Plaintiff responds that any reliance defense is not unique to him.

An initial dispute arises concerning the manner in which the reliance issue enters the case. Defendants argue that plaintiff must satisfy the requirements of the "forced seller" doctrine in order to recover for a violation of Section 10(b). Although the Seventh Circuit has not explicitly adopted the forced seller doctrine, the doctrine's essential principles were followed in *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326 (7th Cir.1969). In *Swanson*, the defendants in a Section 10(b) case had argued that plaintiffs could not prove causation because the reorganization at issue would have been approved even if full disclosure had been made, in light of the majority interest of one of the defendants. The court rejected the defendants' argument, finding that despite plaintiffs' minority position, they might nonetheless be able to prove causation:

> It may well be that the misstatements and omissions contained in the proxy statements caused some Peoria shareholders to approve the sale, thus losing their statutory appraisal remedies. Other minority shareholders who failed to vote for or against the plan may nevertheless have been lulled into sleeping on their dissenters' rights. We are not prepared to sanction a rule of causation which would presume that full disclosure to minority shareholders could have no transactional function in corporate affairs.

415 F.2d at 1332.

In *Wright v. Heizer Corp.*, 560 F.2d 236, 250 (7th Cir.1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978), the court stated that a misrepresentation or omission would presumably be immaterial, and reliance could not be shown, where a shareholder would have been powerless to prevent the transaction even with full knowledge. However, the court held that where the shareholder had a right to bring an action in state court to enjoin a breach of fiduciary duty, materiality and reliance could be shown because a shareholder with full knowledge would not have been powerless to prevent the transaction. 560 F.2d at 250. *See also Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 474 n. 14, 97 S.Ct. 1292, 1301 n. 14, 51 L.Ed.2d 480 (1977) (failure to give advance notice of merger was not material where minority shareholders had no legal remedy to enjoin the merger); *Issen v. GSC Enterprises, Inc.*, 508 F.Supp. 1278, 1287–88 (N.D.Ill.1981) (Aspen, J.) ("In the context of a going private merger, omitted or undisclosed information is deemed material if it has a bearing on the minority shareholder's decision whether to tender his shares pursuant to the majority's terms or bring an appropriate state court action seeking injunctive relief.").

Defendants cite the Second Circuit's forced seller test, under which a plaintiff must show that he believed the misrepresentation, that he relied on it in not pursuing available methods of self-protection, and that he would have succeeded had he been advised of the truth and pursued such methods. *See Madison Consultants v. FDIC*, 710 F.2d 57, 64 (2d Cir.1983).

Plaintiffs respond that the forced seller doctrine relates only to the issues of materiality and causation, and that defendants confuse those issues with the issue of reliance. However, the issue of reliance is related to the issues of materiality and causation and is implicated by the forced seller doctrine. For instance, Judge Shadur has described the standard applicable in the related context of a cash-out merger:

> [R]eliance has a double aspect: Plaintiffs must show [that the named plaintiff] would have acted somehow differently than he did if all facts were known, and that change in action must be relevant in

light of the inevitability of the approval of the merger.

*Susman v. Lincoln American Corp.*, 578 F.Supp. 1041, 1060 (N.D.Ill.1984) (Shadur, J.). Indeed, the relationship between materiality and reliance is clear from the Supreme Court's simple holding that reliance may be presumed from materiality in Section 10(b) actions. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972).

There is some doubt as to the viability of the forced seller doctrine in this circuit, in light of the statement in *Ray v. Karris*, 780 F.2d 636, 640 n. 1 (7th Cir.1985) that "[t]his circuit has yet to accept or reject the 'forced seller' doctrine and we express no view on the continued efficacy or scope of the doctrine." However, the applicability or scope of the forced seller doctrine need not be reached here. What is important for present purposes is simply that plaintiff must satisfy the element of reliance in order to prove a violation of Section 10(b).[5]

This leads to the real dispute with respect to typicality. It is well settled that "[w]here it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative." *Koos v. First National Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir.1974). *See also J.H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d 994 (7th Cir.1980). This principle has been applied to defeat class certification where the named plaintiff is subject to a unique reliance defense. *E.g., McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331 (N.D.Ill.1982) (Getzendanner, J.).

The question here is whether it is predictable that a major focus of the case will be a defense of reliance unique to plaintiff. Although defendants' argument is somewhat convoluted, they essentially argue that plaintiff is subject to a unique reliance defense because he was opposed to the transaction, spoke to an attorney, and did not take any legal action to challenge the transaction. The Court finds that these circumstances do not establish that a major focus of plaintiff's claim will be a reliance defense at all, much less one that is unique to him as opposed to other class members.

Defendants do not argue that plaintiff had full knowledge of the facts which defendants allegedly misrepresented or failed to disclose in connection with the transaction, nor do they argue that plaintiff would not have challenged the transaction if he had been advised of those facts. Defendants' reliance argument seems to be that because plaintiff was opposed to the transaction in any event, full knowledge of the facts would not have changed his position. Defendants then argue that plaintiff's failure to take legal action at the time of the transaction, despite his opposition to the transaction, demonstrates his lack of reliance. Defendants overlook the possibility, however, that plaintiff may have been driven to take legal action to stop the transaction if, at the time, he had been fully advised of the facts. This possibility is not negated by plaintiff's opposition to the transaction itself, nor is it negated by his failure to challenge the action legally (a failure which may be explained by his lack of full knowledge) or his failure to challenge the action by voting against it (which apparently was due to plaintiff's view that such a vote would be futile). Defendants simply have not come forward with any credible showing that plaintiff is subject to a substantial reliance defense which makes him atypical.

The cases cited by defendants in which class certification has been denied all involve circumstances where the named plaintiff stood in a very different position

---

5. In securities fraud cases such as this, reliance is initially presumed. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 990–93, 99 L.Ed.2d 194 (1988); *Affiliated Ute Citizens, supra*, 406 U.S. at 153–54, 92 S.Ct. at 1472; *Wright, supra*, 560 F.2d at 250; *Susman, supra*, 578 F.Supp. at 1060. The presumption of reliance, however, is subject to rebuttal by the defendants. *See Basic*, 108 S.Ct. at 992; *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1048 (7th Cir.), *cert. denied*, 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977); *Katz v. Comdisco, Inc.*, 117 F.R.D. 403, 409 (N.D. Ill.1987) (Bua, J.); *Susman*, 578 F.Supp. at 1060.

from the other putative class members. For example, in *Cohn, supra,* the plaintiff challenged numerous oral and written misrepresentations which occurred over a 33-month time period, giving rise to individual questions concerning reliance. 628 F.2d at 997–98. Furthermore, the court in *Cohn* did not hold that class certification was inappropriate; it merely declined to take the extraordinary step of issuing a writ of mandamus to require the district court to certify the class. 628 F.2d at 997–99. In *Koos, supra,* the named plaintiff was subject to a possible defense under a statute which simply did not apply to other class members. 496 F.2d at 1165. In *McNichols, supra,* plaintiff had relied on oral statements which had not been delivered to the other class members. 97 F.R.D. at 335.

In this case, in contrast, plaintiff's situation has not been shown to be substantially different from that of other class members. The case is thus similar to other cases in which class certification has been held to be proper. *See, e.g., Swanson, supra,* 415 F.2d at 1333; *Katz, supra,* 117 F.R.D. 403; *Ridings v. Canadian Imperial Bank,* 94 F.R.D. 147, 151 (N.D.Ill.1982) (Aspen, J.); *Issen v. GSC Enterprises, Inc.,* 522 F.Supp. 390 (N.D.Ill.1981) (Aspen, J.). *Cf. Basic, supra,* 108 S.Ct. at 981 (affirming district court's presumption of reliance upon public statements which allowed district court "to find that common questions of fact or law predominated over particular questions pertaining to individual plaintiffs"). This is not to say, of course, that plaintiff stands in an identical position to that of the other unaffiliated shareholders. Some individual questions concerning reliance may well arise. Those questions, however, may be dealt with at a later date by appropriate measures. *See Issen,* 522 F.Supp. at 403. The Court finds that plaintiff's claims are sufficiently typical of those of the class members in general to satisfy the typicality requirement of Rule 23(a).[6]

■ *Adequacy of Representation.* Defendants have not disputed the quality of plaintiff's attorneys or the vigorousness of plaintiff's prosecution of this action. They do contend that plaintiff is an inadequate class representative because of the allegedly unique defense of reliance which applies to him. This argument is rejected for the reasons stated with respect to the typicality requirement. The Court finds that plaintiff and his counsel will fairly and adequately protect the interests of the class.

■ *Predominance and Superiority.* Although defendants have not specifically contended that the requirements of Rule 23(b)(3) are not satisfied, their arguments concerning the uniqueness of plaintiff's case implicate those requirements. For the reasons stated in the discussion of the typicality requirement, the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Furthermore, the Court finds that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The utility of the class action device has been recognized in the securities fraud context, where individual claims may be too small to merit separate lawsuits and may be combined to provide "an efficient deterrent against corporate wrongdoing." *Issen, supra,* 522 F.Supp. at 400.

Having found that the requirements of Rules 23(a) and 23(b)(3) are satisfied, the Court will certify the class with respect to the Section 10(b) count.[7]

---

**6.** Defendants also claim that plaintiff is subject to a unique defense of waiver because of his failure to pursue available remedies at the time of the transaction. Defendants' waiver argument is essentially the same as their reliance argument and is rejected for the same reasons.

**7.** Defendants also oppose certification with respect to plaintiff's claim of violation of Section 14(a) of the Securities Exchange Act of 1934. Defendants claim that Centrafarm is a foreign

private issuer exempt from Section 14(a) pursuant to 17 C.F.R. 240.3a12–3b and that certification would therefore "be a useless exercise." Plaintiff, of course, contends that his allegations do state a claim for violation of Section 14(a). To resolve the class certification issue by first determining whether plaintiff's complaint states a cause of action on the merits would turn the class certification procedure on its head and would violate the principle of Fed.R.Civ.P. 23(c)(1), which requires the Court to address

## IV. PENDENT CLAIMS

■ Defendants argue that even if a class is certified with respect to plaintiff's federal claims, it should not be certified with respect to the pendent state law claims. They argue that the laws of various states will apply, depending on the citizenship of the different class members, and that this variety in applicable legal principles makes class certification inappropriate. They also argue that the individual reliance issues are more significant than they are with respect to federal securities claims, because the presumption of reliance does not apply.

With respect to plaintiff's claim for breach of fiduciary duty, the applicable law is the law of the state of incorporation. *First National City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 621, 103 S.Ct. 2591, 2597, 77 L.Ed.2d 46 (1983); *Treco, Inc. v. Land of Lincoln Savings and Loan,* 749 F.2d 374, 377 (7th Cir.1984). Defendants' arguments concerning state laws therefore do not apply to the fiduciary duty claim, and the Court finds that this claim is appropriate for class certification.

■ With respect to plaintiff's common law fraud claim, defendants argue that differences between state laws, and the need for each plaintiff to prove reliance, render a class action unmanageable. The Court disagrees. First, there has been no showing that the elements of common law fraud differ significantly from state to state. *See In re Orfa Securities Litigation,* 654 F.Supp. 1449, 1462–63 (D.N.J.1987). Second, the Court has not been presented with any indication that substantial individual questions of reliance are likely to arise. The allegations of fraud are straightforward and concern a proxy statement rather than individual misrepresentations to various class members. Furthermore, the elements of the common law fraud claims will be substantially similar to the securities fraud claim, and there is likely to be a substantial overlap of evidence and legal argument. In *Orfa,* the court persuasively emphasized such considerations in holding that class certification was appropriate with respect to pendent state law fraud claims. 654 F.Supp. at 1459–62. *See also Helfand v. Cenco, Inc.,* 80 F.R.D. 1, 10 (N.D.Ill.1977). *But see Katz, supra,* 117 F.R.D. at 412; *Seiden v. Nicholson,* 69 F.R.D. 681, 686 (N.D.Ill.1976) (Robson, J.). The Court believes that any individual issues which arise in this case can be effectively dealt with by holding individualized hearings or by altering the class certification if the need develops.

## V. SCOPE OF CLASS

■ Defendants argue that plaintiff's proposed class is too broad, and that the class should not encompass persons who purchased shares of Centrafarm stock after February 5, 1988. Defendants argue that under plaintiff's theory, a complete disclosure in the February 5 proxy statement would have resulted in a higher market price for Centrafarm stock and a higher price in the going private transaction. Persons who purchased stock after this date thus paid an artificially low price, and they did not suffer any economic injury when they subsequently were forced to sell their stock.

Plaintiff responds that all shareholders who sold stock after the issuance of inadequate proxy materials received less than they would have received if full disclosure had been made, regardless of when they purchased their stock. Although plaintiff's position may be an oversimplification, the Court agrees that defendants' proposed limitation is inappropriate. There may be individual issues with respect to damages, based on the date of various class members' purchases of Centrafarm stock. If

---

class certification at the earliest possible stage in the litigation. *See Bieneman v. City of Chicago,* 838 F.2d 962, 964 (7th Cir.1988). Defendants have not presented any separate arguments concerning the appropriateness of class certification with respect to the Section 14(a) claim. The requirements of Rules 23(a) and 23(b)(3) have been satisfied as described in the text with respect to the Section 10(b) claim, and the Court will not examine the merits of the Section 14(a) claim at this time. The class is therefore certified with respect to the Section 14(a) claim as well.

necessary upon further developments in this case, subclasses may be created or the scope of the class may be narrowed. *See* Fed.R.Civ.P. 23(c) (class certification order may be altered or amended, and class may be divided into subclasses); *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 992 n. 29, 99 L.Ed.2d 194 (1988) (in context of reliance issues in securities fraud case, district court may amend certification order during trial). At this early stage, however, possible individual differences are not so significant as to warrant excluding from the class any persons or entities who purchased their stock after February 5. The Court therefore adopts plaintiff's definition of the class.

## VI. CONCLUSION

The Court finds that the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied and thus certifies the class described by plaintiff. The parties are directed to confer in an attempt to agree on the language of the notice which must be sent to class members pursuant to Rule 23(c). A status hearing will be held on February 14, 1989, at which time the parties shall inform the Court whether they have reached such an agreement.

