In re VMS SECURITIES LITIGATION.

No. 89 C 9448.

United States District Court,
N.D. Illinois, E.D.

March 27, 1991.

Marvin A. Miller, Patrick E. Cafferty, Chertow & Miller, Chicago, Ill., for David & Ilene Albert, M. Bud Mittleman, Joseph & Mary Iantuono, Judith Ludwig, Quaker Valley Meats, Norman Fleekop, Stewart Eisenberg, Lewis Rubin, John & Ilana Falco, Holly Parmenter, Ruth Anne Dykema, Marie Matson and Barbara Tepperman.

David J. Bershad, Jerome Congress, Robert A. Wallner, Richard Weiss, Edith Polvay, Milberg Weiss Bershad Specthrie & Learch, New York City, for David Albert, Ilene D. Albert and H. Bud Mittleman.

Mark C. Gardy, Judy Spanner, Abbey & Ellis, Curtis V. Trinko, Law Offices of Curtis Trinko, New York City, for Mary A. Marangos.

Robert D. Allison, Law Offices of Robert D. Allison, Chicago, Ill., for John Holcomb.

Richard Appleby, Law Offices of Richard Appleby, New York City, for Bertrand C. Sellier.

Robert S. Atkins, Robert Williams, Robert S. Atkins & Associates, Chicago, Ill., for Lavinia Holzhaur and Margot B. Duxler.

Stephen B. Diamond, Beeler, Schad & Diamond, Chicago, Ill., for Alan L. Hess.

Sherrie Savett, Todd Collins, Berger & Montague, Philadelphia, Pa., Steven Toll, Cohen Milstein Hausfeld & Toll, Washington, D.C., for Edward McDaid.

Glen DeValerio, Margaret G. Dobies, Melissa M. Thomson, Berman DeValerio & Pease, Boston, Mass., Stanley Grossman, Pomerantz Levy Haudek Block & Grossman, New York City, for Holly Parmenter and Ruth Anne Dykema.

Michael S. Glassman, Kathleen L. Clemens, Clemens Glassman & Clemens, Los Angeles, Cal., for John A. and Ilana M. Falco.

Scott W. Fisher, Bruce E. Gerstein, Bertram Bronzaft, Garwin Bronzaft Gerstein & Fisher, New York City, Michael J. Freed, Joseph D. Ament, Michael B. Hyman, Much Shelist Freed Denenberg Ament & Eiger, Chicago, Ill., for Jeffrey Alexander.

Kenneth G. Gilman, David Pastor, Gilman and Pastor, Boston, Mass., for Lavinia Holzhaur.

David G. Gold, Paul F. Bennett, Richard D. Harmon, Reed R. Kathrein, David B. Gold, A Professional Law Corp., San Francisco, Cal., Jeffrey D. Hupert, Johnson & Colmar, Chicago, Ill., for Michael S. Corey.

Oliver Burt, Greenfield & Chimicles, Haverford, Pa., Lawrence Walner, Lawrence Walner & Assoc., Chicago, Ill., for Walter D. Ford, Sr.

Ronald L. Futterman, Hartunian Futterman & Howard, Chicago, Ill., Robert W. Kirby, Lubna M. Faruqi, Kaufman Malchman & Kaufman & Kirby, New York City, for Sol Klughaupt.

Robert L. Leiff, Elizabeth Joan Cabraser, William B. Hirsch, Marilyn Kaplan, Leif, Cabraser & Heimann, San Francisco, Cal., for Margot B. Duxler.

Robert W. Mills, Law Offices of Robert W. Mills, San Rafael, Cal., for David Albert and Ilene D. Albert.

Michael J. Freed, Joseph D. Ament, Michael B. Hyman, Much Shelist Freed Denenberg Ament & Eiger, Chicago, Ill., for Jeffrey Alexander.

Lawrence Feldman, Needle & Feldman, Philadelphia, Pa., for Quaker Valley Meats and Norman Fleekop.

Robert M. Roseman, Mark S. Goldman, Rudolph Seidner Goldstein Rochestie & Salmon, Eugene A. Spector, John F. Innelli, Eugene A. Spector & Assoc., Philadelphia, Pa., for Marie Matson.

Richard Schiffrin, Schiffrin & Craig, Chicago, Ill., for Mary A. Marangos and Edward McDaid.

Stephen C. Shamberg, Stackler & Shamberg, Donald Statland, Arthur T. Susman, Terry Rose Saunders, Susman Saunders & Buehler, Chicago, Ill., for Paul J. Isaac, David E. Robins, George Barcik, Norman Berman, Cook Brothers Money Purchase Pension Trust & Cook Brothers and Retirement Trust.

Joseph J. Tabacco, Jr., Stamell Tabacco & Schager, New York City, for Sonya Vassos.

Stuart D. Wechsler, Wechsler Skirnick Harwood, Halebian & Feffer, New York City, for Stewart J. Eisenberg.

Klari Neuwelt, Wolf Popper Ross Wolf & Jones, New York City, for Barbara Tepperman.

David Zlotnick, Zlotnick & Thomas, Bala Cynwyd, Pa., for Quaker Valley Meats and Norman Fleekop.

Charles Siragusa, Gregory White, Frank A. Karaba, Wade R. Joyner, Crowley Barrett & Karaba, Chicago, Ill., for Robert Van Kampen and Brewster Realty, Inc.

Matthew Gluck, Jane Wasman, Fried Frank Harris Shriver & Jacobson, New York City, for VMS Realty Investors.

Byron L. Gregory, Steven Hoeft, William P. Schuman, McDermott, Will & Emery, Chicago, Ill., Joseph P. Cyr, Morgan Lewis & Bockius, New York City, Alfred H. Hoddinott, Jr., Asst. General Counsel, Litigation Xerox Corp., Stamford, Conn., for XCC Investment Corp., Xerox Corp., Xerox Credit Corp. and Melvin Howard.

Richard A. DeVine, Dean A. Dicke, Alan T. Slagel, Pope & John, Ltd., Chicago, Ill., for Walter Auch, Sr., David Blalock, Sr., Phillip Brady, Norman Gold, Gerald Nudo, Marvin Sotoloff, Robert Ungerleider and James Wisner.

Norman J. Barry, Alan S. Madans, Christopher G. Walsh, Jr., Rothschild Barry & Myers, Chicago, Ill., for Joseph J. Blake & Assoc., Inc.

Martha A. Mills, David S. Fleming, Schaefer Rosenwein & Fleming, Chicago, Ill., for Marshall & Stevens, Inc.

Sarah R. Wolff, Lowell Sachnoff, Joel M. Neuman, Sachnoff & Weaver, Ltd., Chicago, Ill., for Peter Morris, Joel Stone and Residential Equities, Ltd.

Barry G. Gross, Joel Sprayregen, Nicholas H. Diacou, Clifford E. Yunkis, Shefky & Froehlich, Ltd., Chicago, Ill., for VMS Mortg. Inv. Funds.

Timothy A. Nelson, Donna L. McDevitt, Skadden Arps Slate Meagher & Flom, Chicago, Ill., for Prudential–Bache Properties, Inc. and Prudential–Bache Securities, Inc.

Duane C. Quaini, Jeffrey P. Lennard, Christopher Q. King, Margo Weinstein, Sonnenschein Nath & Rosenthal, Chicago, Ill., for VMS Realty Partners, VMS Securities, Inc., VMS Realty Investors and VMS Financial Guarantee Ltd. Partnership, VMS Financial Services, VMS Mortgage Co., VMS Mortgage Co. II, Chicago Wheaton Partners.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

In this consolidated class action and shareholder derivative suit, plaintiffs are disappointed purchasers of securities issued by one or more of five real estate investment trusts and three real estate limited partnerships (collectively, "the funds"). The funds were allegedly sponsored by defendant VMS Realty Partners ("Realty Partners"). In connection with their investments in these funds, plaintiffs charge forty-seven defendants with securities fraud, breach of fiduciary duty and breach of contract. Defendants include the funds, their officers and directors, the selling agents, Realty Partners and various affiliated companies. Plaintiffs move for class certification pursuant to Fed.R.Civ.P. 23. For the reasons that follow, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

### A. The Funds

Defendant Realty Partners is an Illinois general partnership engaged in real estate investment and development. Third Consolidated and Amended Complaint ("Complaint") ¶¶ 6; 11(i). Over a period of several years, Realty Partners and its affiliates created a "vast real estate empire," by raising close to $2.5 billion from thousands of investors. *Id.* ¶ 6. As part of this empire, Realty Partners sponsored and managed the eight funds that are the subject of this litigation: VMS Mortgage Investment Fund ("MIF"); VMS Mortgage Investors L.P. ("L.P."); VMS Mortgage In-

vestors L.P. II ("L.P. II"); VMS Mortgage Investors L.P. III ("L.P. III"); VMS Strategic Land Trust ("SLT"); VMS Strategic Land Fund II ("SLF II"); VMS Short Term Income Trust ("Short Term Trust"); and VMS Hotel Investment Fund ("Hotel Fund") (collectively, "the funds"). *Id.* ¶¶ 5–6.

The funds were created and offered to investors over a period of approximately four years, beginning in November 1984 with the Short Term Trust. *Id.* ¶ 11(a). Shares in each fund were initially sold to the public through public offerings. *Id.* ¶ 11(a-h). At the close of the funds' initial public offering periods, the funds' securities traded on the American Stock Exchange, NASDAQ and the New York Stock Exchange. *Id.*

The funds made mortgage loans primarily to affiliates of Realty Partners. *Id.* ¶ 6. Realty Partners managed the properties and developments that secured the funds' mortgage loans. *Id.* ¶ 22. In addition, Realty Partners provided the funds' investors with guarantees that the borrowers would meet their debt obligations to the funds. *Id.* Realty Partners frequently advanced cash to the affiliated borrowers so that they could make their debt payments to the funds. *Id.* ¶ 23. Thus, the success of each fund was closely linked to the financial stability of Realty Partners. *Id.* ¶¶ 22–23.

In essence, plaintiffs claim that the funds suffered from gross mismanagement and that the defendants committed securities fraud by misrepresenting to investors the nature of the funds' business practices, loan portfolios, and financial well-being. *Id.* ¶ 7. Defendants are also charged with wrongfully failing to disclose the liquidity problems experienced by Realty Partners, and the troubled financial condition of many of the funds' borrowers. *Id.* The financial instability of the VMS empire was allegedly concealed from investors until November 14, 1989, when Realty Partners finally began to disclose the empire's problems. *Id.* ¶ 8. The market price of the funds' securities dropped substantially in reaction to this news. *Id.* On February 13, 1990, Realty Partners announced that it would terminate its practice of advancing money to affiliated borrowers to enable them to meet their debt obligations to the funds. *Id.* Again, the market price of funds' securities declined dramatically. *Id.*

### B. Procedural History

On December 22, 1989, plaintiffs David and Ilene Albert filed a class action on behalf of all investors in MIF. The Alberts sued some, but not all, of the forty-seven defendants in the present case. Over twenty other class action suits were subsequently initiated. The first class action to sue all the funds on behalf of investors in all the funds was filed on January 11, 1990, and named twenty-seven defendants. On April 30, 1990, all pending cases were consolidated into this single class action on behalf of investors in all eight funds against forty-nine defendants.

Plaintiffs' original consolidated class action complaint was dismissed on October 19, 1990, for failure to comply with the statute of limitations, failure to plead fraud with particularity, and failure to state a claim for which relief could be granted. *In re VMS Securities Litigation*, 752 F.Supp. 1373 (N.D.Ill.1990). The present complaint was filed on December 21, 1990. Plaintiffs' proposed class is comprised of:

> all persons who purchased the securities of the Funds during the period from December 22, 1986 through February 13, 1990, inclusive (the "Class Period") … Excluded from the Class are the defendants, members of the immediate family of each of the individual defendants, the officers and directors of the defendant corporations, any entity in which any of the defendants has a controlling interest, and the legal representatives, heirs, successors and assigns of any of the defendants.

Complaint ¶ 13. Plaintiffs also seek to certify eight subclasses, each subclass being comprised of investors in a particular fund. Each of the thirty-nine counts of the complaint is brought on behalf of a particular subclass, except count nine states a cause of action on behalf of the entire class for violations of §§ 10(b) and 20(a) of the Secu-

rities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.

## DISCUSSION

 Representatives may sue on behalf of a class if (1) class members are so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) claims or defenses of the representatives are typical to those of class members; and (4) the representatives will fairly and adequately protect the interests of the class. Fed.R. Civ.P. 23(a). Additionally, plaintiffs must satisfy one of the elements of Fed.R.Civ.P. 23(b). Because plaintiffs seek certification under Rule 23(b)(3), the court must find that (1) common questions of law or fact predominate, and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3); *Alexander v. Centrafarm Group, N.V.*, 124 F.R.D. 178, 182 (N.D.Ill.1988). The party seeking class certification bears the burden of demonstrating that certification is proper. *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir.1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D.Ill.1988). On a motion for class certification, the court's inquiry is limited to whether the requirements of Rule 23 have been satisfied; the court shall not consider the merits of plaintiffs' claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974).

Class action treatment is particularly suitable in securities fraud cases, where the damages to each individual investor may not be substantial enough to justify incurring the costs of litigation. *See Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985), ("... the effectiveness of the securities laws may depend in large measure on the application of the class action device"), citing *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); *Grossman v. Waste Management, Inc.*, 100 F.R.D. 781, 784 (N.D.Ill.1984) (there is a strong policy favoring class actions in securities fraud litigation), citing *King v. Kansas City Southern Industries*, 519 F.2d 20, 25–26 (7th Cir.1975). Although defendants acknowledge that some form of class certification is appropriate in this action, defendants object to certification of the all-inclusive class. In addition, defendants disagree with the proposed subclasses' definitions; defendants offer their own proposed subclasses to represent the various claims in the complaint.

### A. Requirements of Fed.R.Civ.P. 23(a)

#### 1. *Numerosity*

 The proposed class must be so numerous that joinder of all members is impracticable. The complaint need not allege the exact number or identity of class members. *Patrykus*, 121 F.R.D. at 360, citing 1 H. Newberg, *Newberg on Class Actions* § 3.05 (2d ed.1985). A finding of numerosity may be supported by common sense assumptions. *Grossman*, 100 F.R.D. at 785. In making a determination on numerosity, the court also considers judicial economy and the ability of class members to institute individual suits. *Patrykus*, 121 F.R.D. at 361.

Plaintiffs estimate that there are "thousands" of shareholders in each of the funds. Defendants do not dispute that the class and each of the subclasses are sufficiently large to satisfy the numerosity requirement and that joinder of all class members would be impracticable, if not impossible. Accordingly, the numerosity requirement of Rule 23(a) is satisfied.

#### 2. *Commonality*

██ The party seeking class certification must demonstrate that there is at least one question of law or fact common to the class. Fed.R.Civ.P. 23(a)(2); *Patrykus*, 121 F.R.D. at 361. The commonality requirement is usually met where a question of law refers to standardized conduct by defendants toward members of the proposed class, thereby presenting a common nucleus of operative facts. *Patrykus*, 121 F.R.D. at 361, citing *Franklin v. City of*

*Chicago*, 102 F.R.D. 944, 949 (N.D.Ill.1984). Class treatment cannot be defeated solely because there are some factual variations among the claims of individual members. *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

■ Defendants maintain that plaintiffs' proposed all-inclusive class fails to meet the commonality requirement. Defendants object to the large class because it covers individuals who purchased securities in eight different funds over a period of more than three years. In addition, defendants object to this large class because not all of the forty-seven defendants committed all of the alleged wrongful acts during the three-year class period.

Plaintiffs point out that only one count of the complaint is brought on behalf of the global class—Count Nine—which is brought under §§ 10(b) and 20(a) of the 1934 Securities Exchange Act. Count Nine alleges that certain defendants engaged in a common course of conduct designed to deceive investors into believing that the funds, Realty Partners and its affiliates were financially secure, and that investing in any of the funds would be a solid and profitable investment. Complaint ¶¶ 404–05. In furtherance of this scheme, certain defendants allegedly issued materially misleading documents to the investing public, which artificially inflated the offering price or the market price of the funds' securities. *Id.*

Plaintiffs identify the following as questions of law and fact that are common to the class:

(a) Whether defendants participated in and/or pursued a common scheme and course of conduct to defraud the purchasers of the Funds' securities;

(b) Whether defendants' acts … violated the federal securities laws;

(c) Whether the documents, releases and financial statements disseminated to the investing public and the security

holders during the Class Period omitted or misrepresented material facts about the business, financial condition and future business prospects [of] the Funds;

(d) Whether the price of the Funds' securities during the Class Period was artificially inflated due to the nondisclosures and misrepresentations described herein;

(e) Whether members of the Class have sustained damages, and if so, the proper measure thereof.

*Id.* ¶ 16. These issues, along with the allegations of a "common scheme" of misrepresentations and omissions regarding all of the funds' securities, are sufficient to satisfy the commonality requirement of Rule 23(a) as to the global class.[1] *See, e.g., Longden v. Sunderman*, 123 F.R.D. 547, 551–53 (N.D.Tex.1988) (commonality requirement met where defendants allegedly engaged in a common course of conduct of substantially similar misrepresentations and omissions in connection with offering memorandums for over 100 different limited partnerships). *Accord, In re United Energy Corp. Securities Litigation*, 122 F.R.D. 251 (C.D.Cal.1988).

As to the subclasses, defendants recognize that the members of each subclass share common issues of both law and fact. However, defendants argue that common issues do not predominate over individual issues within each subclass. This objection is considered below in the discussion of the requirements under Fed.R.Civ.P. 23(b).

### 3. *Typicality*

■ In order to certify a class, the claims of the representative plaintiffs must be typical of the claims of the class. Fed. R.Civ.P. 23(a)(3). The class representatives' claims must have the same essential characteristics as the claims of other members of the class. *Patrykus*, 121 F.R.D. at 361–62, citing *De La Fuente v. Stokely–Van Camp*, 713 F.2d 225, 232 (7th Cir.

---

**1.** The court addresses defendants' objections regarding the differences inherent in each fund, and the different alleged misconduct for various

defendants in the discussion on predominance under Rule 23(b)(3).

1983). A representative's claim is typical if it arises from the same event or course of conduct giving rise to the claims of other class members and the claims are based on the same legal theory. *Id.,* citing H. Newberg, *Newberg on Class Actions* § 115(b) (1st ed.1977). The similarity of legal theory may control even where there are factual differences between the claims of the named representatives. *De La Fuente,* 713 F.2d at 232.

### a. Typicality for the Global Class

■ The representative plaintiffs' individual claims are typical of the claims of the global class in Count Nine because they arise out of the same alleged course of conduct by defendants. Defendants disagree with this assessment. Defendants' argument is primarily based on factual differences among the different named plaintiffs. For example, defendants contend that typicality is impossible because the circumstances surrounding each plaintiff's investment decision vary. Some plaintiffs allegedly bought their securities during the initial public offerings and relied on offering prospectuses, while other plaintiffs purchased their securities through brokers on the open-market, and did not review any documents. In addition, some of the purchases were made pursuant to a dividend reinvestment program, and thus involved passive investing, rather than active purchasing on the part of some plaintiffs. These factual differences, however, do not defeat plaintiffs' showing of typicality for the global class. As stated previously in the commonality discussion, plaintiffs allege a common course of conduct in which certain defendants allegedly misled all of the funds' investors by painting an overly optimistic financial picture of the funds, Realty Partners and the affiliated borrowers. The claims of the global class are based on a single legal theory (violations of §§ 10(b) and 20(a)), and these claims are based on a common course of conduct. Accordingly, the claims of the named plaintiffs are typical of the claims of the global class in Count Nine.[2]

### b. Unique Defenses—Reliance Issue

Defendants contend that the claims of certain plaintiffs are not typical of the claims of their respective subclasses because these plaintiffs are subject to unique defenses. In particular, defendants assert that many of the named plaintiffs are subject to unique reliance defenses. It is well settled in this circuit that:

> where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative.

*Alexander,* 124 F.R.D. at 184, quoting *Koos v. First Nat'l Bank of Peoria,* 496 F.2d 1162, 1164 (7th Cir.1974). A unique reliance defense may render a named plaintiff atypical for class certification purposes. *McNichols v. Loeb Rhoades & Co.,* 97 F.R.D. 331, 346 (N.D.Ill.1982). Plaintiffs argue that no unique reliance defenses exist, and even if they did, the individual reliance issues would not become primary issues that require denial of class certification.

■ Defendants claim that plaintiffs who purchased securities during the initial public offerings for the MIF, LP III and SLF II funds are subject to a unique reliance defense. In order to recover under section 10(b) and Rule 10b–5, a plaintiff must ordinarily show that he or she relied on material misrepresentations or omissions in purchasing the security. *Rowe v. Maremont Corp.,* 850 F.2d 1226, 1233 (7th Cir.1988). Defendants observe that plaintiffs' 10(b) claims appear to be based on the fraud-on-the market theory of reliance. Under this theory, a plaintiff may still assert a section 10(b) claim without alleging that he or she directly relied on material

**2.** Defendants' position is based primarily on the Seventh Circuit's decision in *J.H. Cohen & Co. v. American Appraisal Assoc. Inc.,* 628 F.2d 994, 998 (7th Cir.1980). In that case, the Seventh Circuit denied plaintiffs' petition for a writ of mandamus directing the district court to certify the case as a class action. The *J.H. Cohen* decision did not turn on the commonality requirement, but on whether the district court's decision to deny class certification constituted an extreme abuse of discretion to warrant the extraordinary remedy of mandamus.

misrepresentations or omissions; indirect reliance may be presumed. *Basic, Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988). In *Basic,* the Supreme Court explained the nature of the fraud-on-the-market theory:

> The fraud on the market theory is based on the hypothesis that, in an *open and developed securities market,* the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements ...

*Id.* at 241–242, 108 S.Ct. at 988–989 (citation omitted) (emphasis added). Defendants argue that plaintiffs who purchased securities in initial public offerings did not buy in an open and developed market and therefore cannot invoke the presumption of reliance under the fraud-on-the-market theory. *See Freeman v. Laventhol & Horwath,* 915 F.2d 193, 198 (6th Cir.1990) (fraud-on-the-market theory not applicable to new issues because, among other things, "[t]he price of newly issued securities is set primarily by the underwriter and the offeror, not by the market"); *Eckstein v. Balcor Film Investors,* 740 F.Supp. 572, 580–81 (E.D.Wis.1990) (interpreting Seventh Circuit's prior decisions to require efficient market in fraud-on-the-market cases).

■ Plaintiffs do not dispute the requirement of an efficient market for the fraud-on-the-market theory. However, plaintiffs maintain that purchasers of the funds' securities in initial public offerings are still entitled to a presumption of reliance under two other theories: (1) the fraud-created-the-market doctrine, *see Shores v. Sklar,* 647 F.2d 462 (5th Cir. 1981), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983); and (2) the presumption of reliance in cases based primarily on material omissions, as opposed to affirmative misrepresentations, *see Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Whether plaintiffs have properly alleged reliance under either of these two theories is beyond the scope of the court's inquiry on a motion for class certification. As noted above, the court may not reach the merits of plaintiffs' complaint on a motion to certify the class. *Eisen,* 417 U.S. at 178, 94 S.Ct. at 2152. However, it is clear that plaintiffs who purchased securities during the initial public offerings are proceeding on a different theory of reliance than those plaintiffs who purchased on the open market. Defendants are therefore correct in observing that the initial public offering purchasers are subject to different reliance defenses than purchasers on the open market.

While the reliance issue for initial public offering plaintiffs may be different, it is not "unique" in the sense that these plaintiffs cannot serve as subclass representatives. Instead, these plaintiffs should serve as representatives for separate subclasses whose members purchased securities in the initial public offerings and are invoking either the fraud-created-the-market theory of reliance, or the presumption of reliance in material omissions cases. Accordingly, three separate subclasses should be created for plaintiffs who purchased securities in MIF, LP III and SLF II during these funds' initial public offerings. Plaintiffs shall be allowed to amend their class definition to provide for these three subclasses.

■ Defendants also maintain that certain named plaintiffs are atypical because they relied on the advice of brokers, family members or others in making their stock purchases. Defendants claim that these plaintiffs did not rely on the integrity of the market in making their purchases. This argument lacks merit. The fraud-on-the-market theory of reliance does not automatically exclude investors who relied on others' advice in purchasing their securities. As long as the advisors were unaware of the misrepresentations and omissions, or did not otherwise possess inside information regarding the securities, the fraud-on-the-market theory of reliance may still apply. *See Grossman,* 100 F.R.D. at 788 (the fact that "many investors rely upon information digested by others" does not constitute unique reliance defense).

Defendants have not demonstrated that any of the named plaintiffs relied on "factors wholly extraneous to the market." *Id.* (citation omitted). Thus, these plaintiffs are not atypical.[3]

■ For similar reasons, the court rejects defendants' argument that plaintiffs who purchased securities through a dividend reinvestment program are subject to a unique reliance defense because they could not have relied on the integrity of the market. Purchasers in the dividend reinvestment program had a choice of whether to reinvest their dividends in the funds' securities or whether to accept a cash dividend. Those who chose to reinvest their dividends presumably did so on the assumption that the market price of the funds' securities accurately reflected their value. Otherwise, all investors would prefer to receive their dividends in cash. Thus, purchasers in the dividend reinvestment program are not prevented from invoking the fraud-on-the-market reliance. Hence, they are not subject to a unique reliance defense.

■ Defendants also claim that many of the named plaintiffs who were deposed failed to demonstrate the requisite due diligence in discovering the alleged fraud. According to defendants, these named plaintiffs are subject to a unique statute of limitations defense. Defendants have not substantiated these assertions. In any event, the statute of limitations defense is applicable to all plaintiffs who purchased their securities more than one year before the filing of the first complaint, not just uniquely to certain plaintiffs. Finally, inasmuch as the statute of limitations defense addresses the merits of plaintiffs' claims, it is beyond the scope of a motion for class certification.

### c. Separate Subclasses for Different Claims

■ Defendants also contest the typicality of the claims of the representative plaintiffs for the proposed subclasses. In particular, defendants object to various subclasses asserting claims under different provisions of the federal securities laws— §§ 10(b) and 20(a) of the 1934 Securities Act and §§ 11 and 12(2) of the Securities Act of 1933, 15 U.S.C. 77k and 77*l*(2). Defendants maintain that such claims cannot be included in a single subclass, and that separate subclasses for each cause of action under sections 10, 11 and 12 must be created because each claim requires a different showing of reliance. In support of this position, defendants offer one district court case, *Hammond v. Hendrickson,* No. 85 C 9829, slip op. at 7–8, 1986 WL 8437 (N.D.Ill, July 30, 1986). In *Hammond,* the plaintiff class brought an action under §§ 11 and 12(2) of the 1933 Securities Act. The *Hammond* court determined that the plaintiff had failed to show that his § 12(2) claims were typical of the class claims, because the plaintiff did not allege that he purchased his securities from a named defendant. However, *Hammond* does not support defendants' bald assertion that separate subclasses are necessary whenever claims are brought under §§ 10, 11 and 12(2).

Plaintiffs cite several cases in support of their position that separate subclasses are unnecessary: *Kaplan v. Pomerantz,* 131 F.R.D. 118 (N.D.Ill.1990); *Goldwater v. Alston & Bird,* 116 F.R.D. 342 (S.D.Ill.1987); *Shankroff v. Advest, Inc.,* 112 F.R.D. 190 (S.D.N.Y.1986); *In re Consumers Power Securities Litigation,* 105 F.R.D. 583 (E.D. Mich.1985); and *In re Data Access Systems Securities Litigation,* 103 F.R.D. 130 (D.N.J.1984). However, these cases do not support plaintiffs' position. The *Kaplan* court refused to certify the § 12(2) claims, the *Goldwater* plaintiffs asserted § 10(b) claims only, and the *Consumers Power* court certified plaintiffs' proposed different subclasses for claims falling under § 11 and § 10(b). Similarly, in *Data Access Systems,* the court certified separate subclasses for § 11 claims and § 10(b) claims as proposed by plaintiffs. Indeed, *Shankroff* is the only case cited by plaintiffs in which the court granted certification of a single

**3.** Should later developments reveal that any of the named plaintiffs did not rely on the integrity of the market in making their purchases, the typicality determination may be re-examined.

class asserting claims under §§ 10(b), 11 and 12(2) of the federal securities laws.

In sum, neither party has presented persuasive authority for their respective positions. The court therefore follows the consensus in this and other districts that individual issues of reliance will not defeat class certification. *See Data Access Systems*, 103 F.R.D. at 147 ("[r]eliance issues always vary among plaintiffs and to deny certification on that basis would destroy the utility of class actions in securities fraud actions"); *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 198 (S.D.N.Y.1986) (generally, individual issues of reliance will not defeat class certification). *Accord, Alexander*, 124 F.R.D. at 184–85. Accordingly, the court will not require separate subclasses for the various federal securities fraud claims.

### 4. Adequacy of Representation

■ In determining whether the named plaintiffs adequately represent the interests of the class, the court examines two factors: (1) whether conflicts of interest exist between the representatives and the rest of the class members, and (2) whether the named plaintiffs' counsel will adequately protect the interests of the class. *Patrykus*, 121 F.R.D. at 362, citing *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.1986).

### a. Conflicts of Interest

■ Defendants contend that several named plaintiffs are inadequate class representatives because they are trustees. According to defendants, these plaintiffs "have fiduciary obligations which may conflict with their obligations as class representatives." Defendants' brief at 26. Defendants rely on *First Interstate Bank v. Chapman & Cutler*, 837 F.2d 775, 781 (7th Cir.1988). In that case, the Seventh Circuit upheld the denial of class certification on the grounds that the named plaintiff—a bank suing on behalf of the estate of a deceased investor—was not a proper class representative. The court's decision was based on the fact that under Nevada law, the bank, as administrator of the investor's

estate, had the power to act only for the benefit of the estate's creditors and beneficiaries. Because the bank's fiduciary obligations under Nevada law conflicted with its obligation as class representative to pay the costs of representation, the bank was an inadequate representative.

In the present case, defendants do not specify the nature of the trustees' fiduciary obligations. Nor do defendants explain how the trustees' fiduciary duties would conflict with class interests. On this showing, the court cannot conclude that the trustee plaintiffs are inadequate representatives. *See, e.g., Kaplan*, 131 F.R.D. at 123 and cases cited therein (administrator of spouse's estate was proper class representative despite defendants' conflict-of-interest concerns); *Bennett v. Tucker*, 127 F.R.D. 501, 507–08 (N.D.Ill.1989) (holding that *Chapman & Cutler* did not establish a strict rule that administrator can never serve as a class representative).

### b. Adequacy of Plaintiffs' Counsel

■ Defendants do not question whether plaintiffs' *counsel* will adequately protect the class interests, and the court is satisfied that plaintiffs' counsel will diligently and competently represent the interests of the class. However, defendants attack the ability of certain named *plaintiffs* to protect the interests of the class, because they know "little or nothing about the lawsuit" or their responsibilities as class representatives. Defendants' brief at 24–25. These objections will not defeat class certification. The vast majority of judges of this court and others recognize that plaintiffs in securities fraud class actions need not have a detailed understanding of their complaint and may rely on the knowledge and expertise of their attorneys in prosecuting their securities fraud claims. *See Kaplan*, 131 F.R.D. at 121–22 ("a layman cannot be expected to explain in detail all of the intricacies of a complex securities fraud lawsuit"; all that is necessary is plaintiff's basic knowledge of the suit and capability to make intelligent decisions based on lawyer's advice); *Heastie v. Community Bank*, 125 F.R.D. 669, 676 (N.D.Ill.1989) (rejecting defen-

dants' argument that plaintiff's lack of knowledge of case's facts and lack of understanding of plaintiff's duties as class representative renders plaintiff an inadequate class representative); *Harman v. LyphoMed, Inc.,* 122 F.R.D. 522, 528 (N.D. Ill.1988) (it is irrational to expect plaintiffs to exhibit a detailed knowledge of the issues in a complex securities case involving novel economic and legal theories such as fraud-on-the market). *Accord, Goldwater,* 116 F.R.D. at 353; *Grossman,* 100 F.R.D. at 792. Adopting the sound reasoning of these opinions, the court concludes that defendants' concerns over some of the named plaintiffs' lack of knowledge or sophistication relating to their securities fraud claims will not suffice to deny certification.

■ Defendants also claim that one of the named plaintiffs, Sol Klughaupt, lives outside the United States and therefore cannot adequately represent the class. Defendants do not explain how or why Klughaupt's residence in Israel would preclude his adequate representation of class interests. In addition, defendants fail to cite any authority for their position. Plaintiffs point out that other courts have rejected the argument that a plaintiff's residence abroad hampers his or her ability to adequately represent the class. *In re Diasonics Securities Litigation,* 599 F.Supp. 447, 453 (N.D.Cal.1984); *Kronfeld v. Trans World Airlines,* 104 F.R.D. 50, 52–53 (S.D. N.Y.1984); *Billet v. Storage Technology,* 72 F.R.D. 583, 587 (S.D.N.Y.1976). Given modern means of communication and travel, a plaintiff's residence outside the country is not necessarily prejudicial to class interests. In the absence of any evidence showing Klughaupt's inability to adequately serve as class representative, the court will not exclude Klughaupt simply because he resides outside the United States.

■ As to defendants' concern over the named plaintiffs' ability to shoulder the costs of litigation, there is no indication that the named plaintiffs in the aggregate will be unable to bear the costs of the suit. The case relied on by defendants, *Rand v. Monsanto Corp.,* No. 85 C 9087, slip. op. at

9–10, 1989 WL 27458 (N.D.Ill. March 22, 1989), was vacated by the Seventh Circuit several weeks after defendants filed their opposition to class certification. *Rand v. Monsanto Co.,* 926 F.2d 596 (7th Cir.1991). In *Rand,* the Seventh Circuit expressly held that "a district court may not establish a *per se* rule that the representative plaintiff must be willing to bear all (as opposed to a pro rata share) of the costs of the action." *Id.,* at 601. In the present case, defendants have not demonstrated that any named plaintiff is unable or unwilling to pay his or her pro rata share of the litigation costs. If, in the future, such evidence becomes apparent, defendants may bring the issue to the court's attention. Fed.R. Civ.P. 23(c)(1).

Defendants' remaining objections to individual plaintiffs are similarly without merit and do not require further discussion. The court finds that the named plaintiffs are adequate representatives of the class and subclasses.

## B. Requirements of Fed.R.Civ.P. 23(b)(3)

■ Even if the requirements of Rule 23(a) are satisfied, plaintiffs must show that their suit falls within one of the categories of Rule 23(b) in order to proceed as a class action. Plaintiffs seek certification under Rule 23(b)(3). Accordingly, the court must determine whether common issues of law and fact predominate, and if so, whether a class action is the superior method of resolving plaintiffs claims.

### 1. *Predominance of Common Questions of Law and Fact*

#### a. Predominance for the Global Class

Defendants object to certification of a single class that includes purchasers of securities from all eight funds. Defendants maintain that differences in dates of purchase, types of misrepresentations, reliance and scienter will overshadow any common legal and factual issues for the global class. Defendants also contend that the global class alleges claims over a changing group of defendants with varying roles in dozens of transactions during the class period.

Defendants exaggerate the perceived differences among the global class members. Defendants seem to overlook the fact that the global class asserts only one claim in the thirty-nine-count complaint—Count Nine. In this count, the global class brings a section 10(b) claim against certain defendants for their roles in an overall fraudulent scheme. The fact that the alleged scheme encompassed securities in eight funds does not, in itself, defeat a finding of predominance. In this case, the types of alleged deception are identical with respect to each fund. In addition, contrary to defendants' suggestions, Count Nine is brought against a limited number of defendants: the funds, Realty Partners and its principals, and two persons who were senior officers of Realty Partners and the funds throughout the class period. The complaint expressly states that these defendants are sued only for culpable acts and omissions occurring during the time period in which they held responsible positions in the VMS empire. Complaint ¶ 403. Given these limits, and the common course of conduct alleged in Count Nine, the court concludes that common issues of law and fact predominate for the global class.

### b. Pendent State Claims

■ Defendants argue that class certification of plaintiffs' pendent claims of fraud and negligent misrepresentation, and the derivative claims should be denied because there is a possibility that the court will have to apply different states' laws. Thus, defendants argue that plaintiffs cannot show that common issues of law predominate over individual issues. Plaintiffs maintain that because the state claims resemble the federal securities fraud claims, there will likely be a substantial overlap of evidence and legal argument. Therefore, even if laws of different states apply to various plaintiffs, the differences among state laws would not outweigh the common issues of law and fact otherwise present in this consolidated lawsuit. This argument is persuasive. Plaintiffs' claims stem from collective alleged misrepresentations and omissions; there are no allegations of individualized statements made by any of the defendants that affected each plaintiff differently. Plaintiffs will have to prove the same misrepresentations and omissions regardless of the state law applicable to each plaintiff's claims. Furthermore, substantial evidence concerning the federal securities claims will also apply to the state law claims, making common issues of fact pervasive.

Defendants argue that plaintiffs bear the burden of demonstrating the applicable law and showing that common issues of law will predominate for the state law claims. Defendants urge the court to deny certification of the pendent claims because plaintiffs failed to make this showing in its memorandum in support of class certification. The court will not deny class certification for the pendent state claims based on plaintiffs' failure to identify the applicable state law and any differences among states. The recent trend in securities fraud cases is to certify related pendent claims, allowing for reconsideration upon a later determination that the applicable state laws are so diverse that class certification is inappropriate. *See Alexander,* 124 F.R.D. at 186; *Randle v. Spectran,* 129 F.R.D. 386, 394 (D.Mass.1988); *Barkman v. Wabash, Inc.,* 674 F.Supp. 623, 634–35 (N.D.Ill.1987); *Goldwater,* 116 F.R.D. at 355. *But see Katz v. Comdisco,* 117 F.R.D. 403, 412 (N.D.Ill.1987) (finding individual issues of reliance precluded certification of common law fraud claims). The court agrees with this approach, particularly since defendants fail to provide any indication that more than one state's law will apply or that state law will materially vary in this case.

Accordingly, the court certifies the subclasses asserting pendent claims. This determination is subject to reconsideration upon a subsequent showing that significant differences exist among applicable state laws.

### 2. *Superiority of Class Action*

■ There is little doubt that a class action is a superior device for litigating plaintiffs' securities fraud claims. The alleged misrepresentations and omissions potentially affected tens of thousands of in-

vestors. Each individual plaintiff may not have suffered significant enough damages to justify litigating his or her claims individually. The Supreme Court has noted that:

> Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device.

*Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980). Defendants acknowledge the utility of a class action for the securities fraud allegations in this case. Accordingly, the superiority requirement is satisfied.

C. Other Objections

1. *Overbroad Subclasses*

■■ Defendants complain that the subclasses are overbroad because they extend beyond the date of the alleged fraudulent concealment. Defendants assert that the subclass periods must end on November 14, 1989, the date that Realty Partners allegedly disclosed their liquidity problems to the public for the first time. Complaint ¶¶ 8, 55. The price of each fund's securities allegedly dropped precipitously following the November 14 announcement. *Id.* ¶¶ 8, 56. Defendants argue that plaintiffs who purchased their securities after November 14, 1989, could not have purchased securities at an artificially inflated price, because the market had already adjusted the price of the funds' securities in reaction to the November 14 announcement. However, defendants ignore the complaint's allegations that defendants continued to hide the full extent of Realty Partners' and the funds' financial problems until February 13, 1990, when defendants allegedly announced that Realty Partners could no longer advance money to affiliated borrowers so that the borrowers could meet their debt payments to the funds. *See* Complaint ¶¶ 8, 59–62. The market price of the funds' securities experienced another substantial decline in reaction to this news. *Id.* Thus, plaintiffs who purchased securi-

ties between November 14, 1989 and February 13, 1990 still purchased their securities at an artificially inflated price, albeit not as inflated as those who purchased prior to November 14, 1989. Accordingly, defendants' proposed time period for terminating the subclasses is not appropriate. The cut-off date of February 13, 1990 is proper.

■■ Defendants also contend that the subclasses must exclude investors who allegedly purchased their securities at an artificially inflated price, yet sold them before the November 14, 1989 announcement. Defendants reason that these investors suffered no damages, since the market price at the time they sold their securities was still artificially inflated. Defendants rely on *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1344–46 (9th Cir.1976) (Sneed, J. concurring). The *Green* concurrence, however, does not state that investors who sell prior to disclosure of the misrepresentation suffer no damages. Indeed, Judge Sneed expressly states that "purchasers who sold before disclosure ... also may recover even though their selling price exceeded their purchase price." *Id.* at 1346. Further, the decision to include investors who sold prior to disclosure in the same class as investors who sold after disclosure does not make class certification arbitrary or capricious. *Id.*

Additionally, the argument that damages are not recoverable for one who purchased stock during the period of misrepresentation but sold it before any disclosure was squarely rejected in *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir.1987) (such individuals may recover out-of-pocket damages even in the absence of corrective disclosures). Furthermore, although the Seventh Circuit has not yet addressed the specific issue raised in *Wool* and *Green*, the court recognizes that plaintiffs are entitled to recover for any loss attributable to defendants' material misrepresentations or omissions, even where the securities were sold for more than their purchase price after disclosure. *See Rand v. Monsanto Co.*, 926 F.2d 596, 597–98 (7th Cir.1991),

citing *Goldberg v. Household Bank*, 890 F.2d 965, 966–67 (7th Cir.1989).

Clearly, investors who purchased the funds' securities at allegedly inflated prices are entitled to recover damages equal to the difference between the purchase price and the value of the security without the misrepresentations at the time of purchase. *Katz*, 117 F.R.D. 403, 408 (N.D.Ill.1987), citing *In re LTV Securities Litigation*, 88 F.R.D. 134, 148 (N.D.Tex.1980). The court will not exclude from the subclasses investors who sold prior to disclosure.[4]

2. *Section 10(b) Claims of Public Offering Purchasers*

■■■ Defendants contend that those plaintiffs who purchased securities of MIF, LP III and SLF II in the initial public offerings for these funds may not assert section 10(b) claims. Defendants reason that these plaintiffs have failed to satisfy the reliance requirement for a section 10(b) claim, and therefore must be excluded from the subclasses charging section 10(b) violations. In the foregoing discussion on typicality, the court explained that these plaintiffs have articulated two theories of reliance upon which they could recover. Whether plaintiffs have properly alleged reliance under either of these two theories is beyond the scope of the court's inquiry on a motion for class certification. As noted above, the court may not reach the merits of plaintiffs' complaint on a motion to certify the class. *Eisen*, 417 U.S. at 178, 94 S.Ct. at 2152. At this juncture, the court shall not exclude those plaintiffs who purchased MIF, SLF II and LP III securities in initial public offerings from asserting section 10(b) claims for failure to allege reliance. These plaintiffs may represent subclasses consisting of purchasers in the initial public offerings for each of these three funds. This decision may be re-examined, if appropriate, after resolution of defendants' pending motions to dismiss the complaint.

CONCLUSION

Plaintiffs' motion for class certification is granted in part and denied in part. Investors in the MIF, SLF II and LP III funds who purchased their securities during the initial public offerings may not assert their securities fraud claims in the same subclasses as those who purchased MIF, SLF II and LP III securities on the open market. Plaintiffs may amend their class definitions to allege three new subclasses for plaintiffs who purchased securities in MIF, LP III and SLF II during these funds' initial public offerings. Plaintiffs' motion is granted in all other respects.

---

**4.** Plaintiffs concede that if it is determined at trial that the amount of inflation at the time of any individual's sale exceeded or equalled the amount of artificial inflation at the time of purchase, then that person would recover no damages. However, the amount of damages each individual suffered as a result of the alleged securities fraud cannot be determined on a class certification motion. *Grossman*, 100 F.R.D. at 785.