CSX TRANSPORTATION, INC.,
Appellant–Defendant,

v.

George W. CLARK, Hamilton County Farm Bureau Cooperative Association, Inc., Britton Farms, Inc., and all others similarly situated, Appellees–Plaintiffs.

No. 29A04–9408–CV–342.

Court of Appeals of Indiana,
First District.

Feb. 24, 1995.

Christopher G. Scanlon, Mark A. Voigtmann, Baker & Daniels, Indianapolis, Michael A. Howard, Noblesville, for appellant.

Henry J. Price, Price & Barker, Indianapolis, Nels J. Ackerson, Ackerson & Bishop, Washington, DC, John D. Proffitt, Campbell, Kyle & Proffitt, Carmel, for appellees.

David C. Ford, Indianapolis, for amicus curiae.

ROBERTSON, Judge.

CSX Transportation, Inc. brings this interlocutory appeal challenging the trial court's conditional class certification in this class action lawsuit brought by persons who own land next to, or over which, CSX had a right-of-way (easement) it had abandoned. The class seeks 1) to have the titles to the abandoned right-of-ways quieted in their favor, and 2) to recover damages from CSX for slander of title. CSX raises five issues, none of which constitute reversible error. The Indiana Farm Bureau, Indiana Farmers' Union, and the Railroad Property Owners Association have filed an Amici Curiae brief in support of the conditional class certification.

### FACTS

■ The facts in the light most favorable to the trial court's conditional class certification reveal that in the past twenty years, railroads have abandoned hundreds of miles of tracks in Indiana as the demand for railroad service has declined. The law is well-established that where a railroad holds only an easement or lesser interest in the property upon which its tracks cross, the abandonment of the tracks triggers an extinguishment of the railroad's interest and ownership reverts to the fee simple owner with a deed containing the property within its description or, if none, the adjoining fee simple owners. Ind.Code 8–4–35–4 and 5; *Ross, Inc. v. Legler* (1964), 245 Ind. 655, 199 N.E.2d 346. However, where the railroad holds a fee simple interest in a railroad corridor, an abandonment does not trigger an extinguishment of the railroad's fee simple interest. *Simkin v. New York Central R.R. Co.* (1966), 138 Ind.App. 668, 214 N.E.2d 661. The increasing number of railroad track abandonments has sparked a great deal of litigation over the ownership of abandoned railroad corridors. *See, e.g., Brown v. Penn Central Corporation* (1987), Ind., 510 N.E.2d 641; *Lake County Trust Co. v. Lane* (1985), Ind.App., 478 N.E.2d 684, *trans. denied; Richard S. Brunt Trust v. Plantz* (1983), Ind.App., 458 N.E.2d 251. In an effort to achieve judicial economy and avoid the costs of repetitive suits by individual landowners, class actions have been employed to clear title to these abandoned rights-of-way. *See e.g., CSX Transportation, Inc. v. Rabold* (1992), Ind.App., 593 N.E.2d 1277, *trans. denied.*

The clearing of title to these abandoned corridors is important to the adjacent landowners (many of whom are farmers) because the land, in many cases, may be returned to productive farming. Moreover, the clearing of title enables landowners to move their fences to the borders of their property, post areas to prevent hunting, and overall assures that the right-of-way will not be used in a manner inconsistent with the interests of the adjacent landowners. Most of these landowners do not have a sufficiently large economic claim to justify the expense of litigating their claims against CSX separately.

The present class action is based on CSX's unreasonable refusal to acknowledge the extinguishment of abandoned right-of-ways (easements or lesser interests) throughout Indiana and CSX's continued course of conduct in exercising dominion over these extinguished interests which has clouded the landowners' title to abandoned railroad corridors. For example, one class member, Ted Britton, has alleged that CSX has refused to acknowledge that it no longer has an interest in the abandoned easement adjacent to Britton's property and has instead actively attempted to sell the right of way in its entirety to third parties, soliciting minimum bids of $25,000.00. Nowhere in CSX's letters which have solicited such bids has CSX mentioned that its interest in the property may have been extinguished. Britton alleges that this conduct has slandered his title to the abandoned easement and entitles him to recover damages from CSX.

Similarly, class member George Clark alleges that CSX purported to grant an ease-

ment for a fiber optics cable to American Telephone & Telegraph [AT & T] on the abandoned railroad easement adjacent to his property. Clark argues that CSX's purported grant of the easement implies its assertion to ownership of the abandoned corridor in either direction of Clark's property because an isolated easement along the corridor would be of no value to AT & T.

Class member Hamilton County Farm Bureau Cooperative Association has alleged that CSX had actually sold the extinguished right-of-way adjacent to the Cooperative's land to a third party, who has now demanded payment of $20,000.00 for the return of the property to the Cooperative. In the quitclaim deed by CSX to the third-party purchaser, CSX reserved a 15 foot easement along/across the premises for fiber optic capabilities.

CSX admitted that it had from time to time transferred whatever interest it may have in abandoned railroad corridors to third parties by quitclaim deed. CSX admitted that four such transfers had been made in Hamilton County.

## DECISION

■■■■ An interlocutory appeal challenging the conditional certification of a class action requires the court on review to consider only whether the trial court abused the wide discretion afforded it in the application of the Ind.Trial Rule 23 guidelines governing the certification of class actions. *Skalbania v. Simmons* (1982), Ind.App., 443 N.E.2d 352. In determining whether the trial court abused such discretion, we will not reweigh the evidence and will consider only the evidence most favorable to the trial court's determination and all reasonable inferences to be drawn therefrom. *Id.* If the trial court's exercise of discretion is supported by substantial evidence, it will withstand appellate review. *CSX*, 593 N.E.2d at 1278. Where, as in the present case, the trial court enters findings of fact in support of its class certification, our review is governed by the Ind.Trial Rule 52 clearly erroneous standard. *See American Cyanamid Company v. Stephen* (1993), Ind.App., 623 N.E.2d 1065.

■■ Ind.Trial Rule 23, governing class actions, reads:

**(A) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

**(B) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of:

(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in the management of a class action.

Trial Rule 23 requires litigants to jump through several hoops. *Skalbania*, 443 N.E.2d at 357. First, the class applicants must establish *all* the conditions under subsection (A) of T.R. 23; and then they must demonstrate that the common questions of law or fact predominate over individual questions and that a class action is superior to other methods of dispute resolution. *Id.* Federal class action cases decided under Federal Rule 23 are persuasive authority for Indiana Courts interpreting Ind.Trial Rule 23. *Id.*

### I.

Whether the class certification of the slander-of-title claims satisfied the numerosity requirement of T.R. 23(A)(1)?

■ CSX asserts that the trial court erroneously permitted the slander-of-title claims to be "piggybacked" on the quiet title claims. CSX points out that the quiet title claims and the slander-of-title claims do not enjoy a "one-for-one relationship" and asserts the trial court was required to enter a "numerosity" finding with respect to both claims. Moreover, CSX asserts there is no evidence in the record that it had slandered the title of any property. We disagree.

■ The class to be certified must be so numerous that joinder of all members is impracticable. T.R. 23(A)(1); *In re VMS Securities Litigation* (N.D.Ill.1991), 136 F.R.D. 466, 473. A finding of numerosity may be supported by common sense assumptions. *VMS*, 136 F.R.D. at 473. In making a determination on numerosity, the court considers judicial economy and the ability of class members to institute individual suits. *Id.* In the initial determination of conditional class certification with respect to numerosity, the question is not what number of persons possess valid claims, but rather what number of persons fit within the purported class and are likely to make claims, whether or not those claims are likely to succeed. *Herrmann v. Atlantic Richfield Company* (W.D.Penn.1974), 65 F.R.D. 585, 590.

The trial court entered the following findings pertinent to this issue:

7. *Numerosity.* The Court finds that the potential members of the class defined by the attached class certification order are too numerous to permit formal joinder of each of the potential class members in a single action and that such joinder would be impractical. The complaint alleges that there are hundreds of miles of abandoned CSX rights-of-way in the state. Although the present state of the record does not permit an estimate of the actual number of class members, plaintiffs estimate that there are likely thousands of potential class members. This is a reasonable estimate at this stage in the case. It would be extremely burdensome and expensive for each member of the potential class to join individually in the present action, not only because of the size of the potential class, but also because they are spread across a number of counties in the state.

\* \* \* \* \* \*

10. With respect to the slander of title claim ..., the Court finds sufficient evidence in the record that the slander of title claim is common to all members of the class based on CSX's actions in attempting to sell or convey strips of land underlying its abandoned right-of-way. The record shows that CSX has actively sought to sell its interest in abandoned rights-of-way in Putnam and Hendricks Counties, did sell a portion of its right-of-way in Hamilton County, and granted or reserved a grant of fiber optic easements along abandoned rights of way in Hamilton County. The testimony of CSX's witness confirms that these are not isolated instances ... CSX admits further that there were four transfers made in Hamilton County. Based on

the foregoing record, the Court finds that CSX has sold, or attempted to sell, its interests in other abandoned rights-of-way elsewhere in the state. The broad, unrestricted claim by CSX to a compensable interest in the abandoned rights-of-way supports the further finding that the claims were made without regard to the specific ownership interests of the class members with claims to ownership of some or all of the right-of-way. Whether in these circumstances the sales, or offers to sell, and grants of easement and reservation of easements constitute actionable slander of title is a common question of law and fact for the class.

\* \* \* \* \* \*

15. The slander of title claims of the named plaintiffs are also typical of those of the class as a whole. As noted above, the record shows that the same actions by CSX asserted as slander of title by the named plaintiffs are typical of the claims likely to be asserted by other class members. Indeed, it is likely that other class members will have the same claims as the named plaintiffs regarding CSX's offer to sell, or actual sales, of the abandoned rights-of-way and the granting of fiber optic cable easements. The letters by CSX offering to sell a county or multi-county right-of-way (upon which Britton Farms bases its slander of title claim) also equally slandered the title of other class members. Based on CSX's admission that it has sought to convey and has in fact conveyed its interest in other abandoned rights-of-way, it is reasonable to conclude at this early stage in the case that CSX similarly attempted to sell all or parts of other abandoned rights-of-way. Similarly, the fiber optic easement challenged by plaintiff George Clark runs the length of the abandoned right-of-way and, therefore, affects the rights of numerous other landowners along that same line, and it is also likely that CSX has made, or reserved, other fiber optic easements on other abandoned rights-of-way.

(Citations to record and footnotes omitted).

The trial court's conclusion is a common sense determination that the evidence demonstrates that CSX has engaged in a course of conduct that has slandered the titles of the class members' land in consciously denying the ownership interest of the members of the class by offering to sell, or actually selling, interests in the land that have been extinguished. The above findings are supported by sufficient evidence of probative value and adequately support the trial court's determination that the class had satisfied the T.R. 23(A)(1) "numerosity" requirement for the slander of title claims. Therefore, the trial court's determination is not clearly erroneous and we find no error.

## II.

Whether the class certification of the slander-of-title claims was proper where there was no definition identifying a class of slander plaintiffs?

 In the present case, one definition of the class was determined for both claims. CSX asserts the trial court should have designated a separate class for the slander-of-title claims. The evidence, as well as the findings set out under Issue I, establish that the alleged conduct of CSX in slandering titles of class members has been widespread. The trial court abused no discretion by not defining a separate class for the slander-of-title claims.

## III.

Whether the class certification of the slander-of-title claims was clearly erroneous?

 CSX argues the evidence required to sustain the slander-of-title claims are plaintiff-specific and there has been no allegation or evidence of any conduct common to all class members. The touchstone of class certification is whether the inquiry presents a common nucleus of operative fact. *Skalbania*, 443 N.E.2d at 358. The propriety of class certification is not determined by the merits of each individual claim, but whether common questions of law and fact will predominate over questions affecting only individual plaintiffs. *Id.* at 359. Economies of time, effort and expense, and uniformity of decision as to persons similarly situated are

the key elements to be considered. *Id.* at 362.

As explained above, the theory of the complaint accepted for certification by the trial court is that CSX has engaged in a course of conduct common to the class in consciously denying the ownership interest of the members of the class. The trial court's determination that common questions of law and fact will predominate over questions affecting only individual plaintiffs is not clearly erroneous and we find no error.

## IV.

Whether the class certification of the quiet title claims was clearly erroneous?

CSX argues the evidence required to sustain the quiet title claims is plaintiff-specific and there has been no allegation or evidence of any conduct common to all class members. The quiet title claims all involve the well-established principle that where a railroad holds only an easement or lesser interest in the property upon which its tracks cross, the abandonment of the tracks triggers an extinguishment of the railroad's interest and ownership reverts to the fee simple owner or the adjoining fee simple owners. Ind.Code 8–4–35–4 and 5; *Ross,* 199 N.E.2d 346. The trial court's determination that common questions of law and fact will predominate over questions affecting only individual plaintiffs is not clearly erroneous and we find no error. *See, CSX,* 593 N.E.2d 1277.

## V.

Whether the class was properly certified under the T.R. 23(B) criteria?

Finally, CSX argues 1) that the class of plaintiffs seek no unitary adjudication which raises the risk of incompatible standards of conduct for CSX; 2) the trial court did not identify, and no class-wide declaratory relief exists which would resolve the plaintiffs' claims; and 3) even if there exists one or more common issues of law or fact, common issues do not predominate and the proliferation of individual issues would result in potentially thousands of mini-trials with no indication of manageability or efficiency.

*CSX, id.,* is instructive. The earlier CSX case involved the same pattern of conduct alleged in the present case; that is, CSX's:

> denial of abandonment is the basis for its refusal to allow the class members to recover full use of their properties. This refusal to act is 'generally applicable' to each of the class members. *See,* T.R. 23(B)(2).

593 N.E.2d at 1279. Moreover, under T.R. 23(C)(4)(b), the trial court may divide a class into subclasses and treat each subclass as a separate class. *Id.* Furthermore, even if it is determined that separate inquiry must be made of class members, the flexibility of T.R. 23 ensnares and defeats CSX's claim that certification was error. *See Id.* A trial court may make individual inquiry to members of the class and approve of individual discovery as a class action device. *Id;* T.R. 23(D).

Sufficient evidence supports the trial court's decision to approve the conditional class certification. Therefore, the trial court's decision is not clearly erroneous or an abuse of discretion and we find no error.

Affirmed.

NAJAM and RILEY, JJ. concur.